219 N.J. Super. 52 (1987)
529 A.2d 1022
SAMUEL SUDLER AND DAVID S. STEINER, APPELLANTS,
v.
ENVIRONMENTAL DISPOSAL CORPORATION AND HILLS DEVELOPMENT COMPANY, RESPONDENTS.
SAMUEL SUDLER AND DAVID S. STEINER, RESPONDENTS,
v.
ENVIRONMENTAL DISPOSAL CORPORATION, THE HILLS DEVELOPMENT COMPANY, JOHN KERWIN AND NEIL CALLAHAN, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1987.
Decided July 15, 1987.
*55 Before Judges BRODY, LONG and D'ANNUNZIO.
Sheppard A. Guryan argued the cause for Samuel Sudler and David S. Steiner (Lasser, Hochman, Marcus, Guryan and Kuskin, attorneys; Bruce H. Snyder on the brief).
Rocky L. Peterson argued the cause for appellants in A-2953-86T5 and for respondent The Hills Development Company in A-2808-86T8 (Brener, Wallack & Hill, attorneys; Rocky L. Peterson and Yvonne Marcuse on the brief).
Kenneth P. Westreich argued the cause for respondent Environmental Disposal Corporation in A-2808-86T8 (Conway, Reiseman, Mattia & Sharp, attorneys; Kenneth P. Westreich on the brief).
G. Allen Washington, Deputy Attorney General, argued the cause for respondent Board of Public Utilities (W. Cary Edwards, Attorney General, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel; G. Allen Washington on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
We consolidated these two appeals: one from a determination by the Board of Public Utility Commissioners (the Board), the other from interlocutory orders entered in the Law Division in a related action. The fundamental dispute in both proceedings is whether Environmental Disposal Corporation (EDC), franchised by the Board to operate a sewage disposal plant servicing a portion of Bedminster Township, lawfully denied Samuel Sudler and David Steiner (Sudler) access to the sewerage system that connects with the plant. Sudler is the developer of a proposed 162-unit residential development on 14 acres. EDC bases its denial on a prior allocation of its remaining capacity to the Hills *56 Development Co. (Hills), developer of 1,000 residential units and a proposed additional 4,200 residential units on 1,700 acres. Sudler petitioned the Board for relief from EDC's denial and sued EDC and Hills in the Law Division for monopolistic conduct and unlawful conspiracy to restrain trade, both in violation of the New Jersey Antitrust Act (N.J.S.A. 56:9-1 et seq.), and for malicious interference with Sudler's reasonable economic expectations.
We first consider the proceedings before the Board, which dismissed Sudler's petition. The following picture emerges from uncontroverted evidence in the record, the Board's findings and its policy determinations.
Access to sewage disposal is of prime importance to a developer. As a matter of policy, the Board encourages the construction of private sewage disposal plants to relieve the serious shortage of housing in the State. Raising capital is a major obstacle to constructing a plant to service an extensive area of future development because in the early phases of development there are too few users to pay the capital cost of the plant, and borrowed capital is not readily available until success of the development is assured. Thus the builder itself must often finance the plant's construction and subsidize its initial operations. That happened here.
Hills formed EDC to construct and operate a plant having capacity that was adequate to meet the needs of its proposed development and, to satisfy the demands of Bedminster, the needs of nearby properties lying outside the development. Hills and EDC agreed that the bulk of the plant's capacity, 800,000 gallons a day of treated wastewater, would be reserved for Hills' needs during the several years that it would take to complete its development. In return, Hills agreed to guarantee financing of the plant's construction and to subsidize its operation until revenues made it self-sufficient. EDC's undertaking, including its agreement with Hills, was approved by the Board *57 on July 29, 1981, when it awarded EDC a public utility sewerage franchise.
Meanwhile, as the result of Mount Laurel litigation, Bedminster amended its zoning ordinance to increase the number of residential units that could be built within EDC's franchise area.[1] As a result of the new ordinance, Hills substantially increased the number of residential units it planned to construct. Also, other properties within the area of EDC's franchise became profitable to develop. EDC thereupon formulated plans to double its plant capacity thereby accommodating Hills' increased needs and the needs of other developers, such as Sudler, who may find it profitable to build within the franchise area. We were advised at oral argument that the New Jersey Department of Environmental Protection has just approved those plans which include building an extension to the plant.
Sudler agreed to purchase its property by a contract dated April 2, 1982. Three months later it requested EDC to allocate it sewerage capacity. Almost two years later, March 15, 1984, EDC turned down the request on the ground that "[t]he treatment capacity of EDC's existing plant is obligated." In December 1984, Sudler petitioned the Board to order EDC to reserve 41,000 gallons a day for its planned development. The Board dismissed the petition on March 8, 1985, but in the same order approved an agreement between EDC and Pluckemin Plaza, a proposed office building development, whereby EDC reallocated 22,000 gallons a day of Hills' 800,000 to Pluckemin.
Three months later Sudler closed title on its property. After Sudler had improved its standing by acquiring title to the property and obtaining preliminary site plan approval from the municipality subject to access to EDC's sewerage system, the *58 Board entered an order on December 10, 1985, granting Sudler's motion to reconsider its petition.
The Board referred the matter to the Office of Administrative Law for a hearing. An Administrative Law Judge (ALJ) recommended allocation to Sudler of 30,380 gallons a day provided that Sudler will be ready to tie into EDC's sewerage system within two years. The Board adopted the initial decision of the ALJ by a 2-1 vote on October 17, 1986. Sudler's victory was short-lived. The Board granted EDC's motion to reconsider and on February 5, 1987, it reversed itself by a 2-1 vote. Sudler now appeals that decision.
In arriving at its final determination, the Board recognized that in view of the limited capacity of EDC's present plant compared to the future needs of Hills, of Sudler and of other developers within the franchise area, there will not be enough capacity for everyone until EDC builds the plant extension. Therefore until the extension has been constructed, assuring one developer access to the sewerage system effectively denies access to others. Thus whoever is given an allocation of the plant's limited capacity receives a preference over those who are not. The question, then, is not whether an allocation constitutes a preference, but whether the preference is reasonable.
The Board concluded that the preference given Hills is reasonable for three reasons. First, Sudler's argument that a developer must have assurance of sewerage access before it undertakes its development, applies equally to Hills. However, a small developer such as Sudler that claims it can complete its development in two years needs assurance only two years before completion, whereas a large developer such as Hills that claims it needs four or five years to complete its substantially more extensive development must have assurance four or five years in advance of completion.
Second, a large developer such as Hills should be encouraged to build by receiving assurance of the sewerage capacity it *59 needs because only a large developer has the resources to finance a sewage treatment plant.
Third, the Board was concerned about the practical difficulties of preferring developers on the "first-come-first-served" basis favored by the dissenting commissioner. If the developer with the earlier predicted completion date is deemed the first, then developers with short build-out periods will continually displace builders with longer build-out periods who had made plans and obtained approvals and financing in reliance upon assurances of sewerage capacity. The resulting uncertainty would, as a practical matter, make it impossible for any development to be built. The Board therefore concluded that the preference EDC had given Hills was reasonable even if for a time the plant's unused capacity is denied Sudler.
To the extent that the Board made findings of disputed facts, our authority is limited to setting aside its order only "when it clearly appears that there was no evidence before the board to support the same reasonably...." N.J.S.A. 48:2-46. Although this record is largely devoted to efforts by the parties to prove whether Sudler would be ready to tie in before Hills had used all available capacity, the Board did not resolve the issue with a finding but rather assumed arguendo that Sudler would be "first." The Board's findings respecting other factual issues could reasonably have been reached on sufficient credible evidence in the record and must therefore be accepted. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).
As to the Board's policy decision, its legislative mandate is broad and its rulings are entitled to presumptive validity. In re Jersey Central Power & Light Co. Petition, 85 N.J. 520, 526-527 (1981). The burden of overcoming this presumption falls upon those who challenge the Board's rulings. Smith v. Ricci, 89 N.J. 514, 525 (1982), app. dism. 459 U.S. 962, 103 S.Ct. 286, 74 L.Ed.2d 272 (1982). The reviewing court may not substitute its own independent judgment for that of the agency. Tp. Committee of Lakewood Tp. v. Lakewood Water Co., 54 *60 N.J. Super. 371, 382 (App.Div. 1959). Where there is room for more than one reasonably held opinion, the agency opinion, if reasonable, prevails. Worthington v. Fauver, 88 N.J. 183, 204-205 (1982).
Sudler contends that the Board acted arbitrarily in failing to enforce against EDC the following portions of two statutes:
48:3-3. Improper service; refusal or withholding of service
No public utility shall ... withhold or refuse any service which reasonably can be demanded or furnished when ordered by the board. 48:3-4. Undue preferences
No public utility shall make or give, directly or indirectly, any undue or unreasonable preference or advantage to any person, locality or particular description of traffic, or subject any particular person, locality or particular description of traffic to any prejudice or disadvantage.
The Board decided that EDC's refusal of service to Sudler was reasonable and that its preference to Hills was not "undue."
To decide whether a public utility has acted reasonably in denying service requires the Board to evaluate facts in the light of reasonable public policy judgments. In making that decision here the Board was confronted with the special factor of EDC's limited sewerage resources. In Wilfong v. Indiana Gas Co., Inc., 399 N.E.2d 788 (Ind. App. 1980), the court upheld a public utility commission's decision that authorized a public utility to deny service where there were limited resources. A shortage of natural gas made it impossible for the utility to maintain service to existing industrial users and still have enough natural gas to offer service to new residential users. The court upheld as reasonable the commission's decision to authorize the utility to deny service to new residential users in light of the commission's reasonable policy judgment that it was more economical to require that new homes be constructed with alternate sources of energy than to require existing industrial natural gas users to convert.
Here the Board decided as a matter of policy that EDC could reasonably deny small developers access to its limited sewerage capacity so that a large developer, for whom that *61 access had been reserved, would have sufficient incentive to finance the sewage disposal plant and so that development within the franchise area would be predictable and therefore possible. Given the deference due the authority and expertise of the Board, we cannot say that its policy is arbitrary and unreasonable. Of course, in the event of changed circumstances, such as the availability of additional capacity or persuasive evidence that Hills is not likely to use the capacity reserved for it, the Board is free to reconsider the matter and modify its order.
Sudler relies on Plainfield v. Public Service Electric & Gas Co., 82 N.J. 245 (1980), a case that does not treat the problem of establishing reasonable priorities for the use of limited resources. There the court invalidated an 80-year-old agreement whereby the public utility had granted a municipality perpetual free service for the right to install electric lines. The court held that over the years the rate preference had become vastly disproportionate to the consideration that the utility had received and, if permitted to stand, would become increasingly more disproportionate over the years to come. Sudler also relies upon Indian River Steam-Boat Co. v. East Coast Transp. Co., 10 So. 480 (Fla. 1891), another case where available resources were not limited. There the court invalidated an agreement between a water carrier and a railroad company that would have denied other railroads reasonable access to the water carrier's dock.
Finally Sudler implicitly argues that the Board forfeited the deference due its expertise because it has vacillated on the policy question at issue. The vacillation is clear. At a time when the Board was under the sway of the dissenting commissioner's policy of "first-come-first-served" it had approved EDC's reallocation of part of Hills' reserved capacity to Pluckemin Plaza's office development because Pluckemin Plaza had obtained site plan approval. Thereafter when the Board adopted its present policy it denied Sudler relief even though by *62 then Sudler had also obtained site plan approval. Indeed in adopting its current policy, the Board had to reverse itself after it had previously granted Sudler relief.
The Legislature has authorized the Board "at any time ... [to] order a rehearing and extend, revoke or modify an order made by it." N.J.S.A. 48:2-40. The fact that a policy question requiring expertise to decide may be close does not mean that it may be decided just as well by persons without expertise. There is no basis for us to give any less deference to the Board decision under review because it was arrived at after the Board reversed its former position on the policy in question or because the Board did not act with unanimity.
Sudler commenced the Law Division action against EDC, Hills and their respective presidents (defendants) on December 27, 1985, two weeks after the Board had reversed its prior order by agreeing to consider Sudler's petition. The complaint, as amended, contained four counts. Sudler sought compensatory and punitive damages under the first count alleging that defendants "willfully" withheld sewerage service from Sudler contrary to N.J.S.A. 48:3-3 and favored Hills with an undue preference contrary to N.J.S.A. 48:3-4. Sudler sought the same damages in the second count in which defendants' conduct was characterized as a "malicious interference with plaintiffs' economic advantage." Sudler sought treble compensatory damages and punitive damages in the third and fourth counts in which defendants' conduct was characterized as violations of the Antitrust Act.
Defendants moved for a summary judgment or at least for a stay of further proceedings until the Board acted on Sudler's petition. The trial judge denied the motion for summary judgment. He stayed the trial, however, but not discovery. Defendants' repeated postponements of depositions produced the orders from which we granted them leave to appeal. The trial court for the second time refused to dismiss the action, specifically ordered the individual defendants to appear for depositions *63 and assessed motion costs in the amount of $300. A week and a half later the Board once more reversed itself and dismissed Sudler's petition for the second and last time. We reverse the trial court's order except for that portion, not complained of on appeal, directing defendants to pay motion costs.
At the heart of the Law Division complaint is the claim that EDC and Hills acted unreasonably in denying Sudler plant capacity in order to reserve that capacity for Hills before Hills would be ready to use it. At the heart of the Board's final decision is the policy judgment that EDC's reservation of plant capacity for Hills at the expense of Sudler was reasonable. Our affirmance of the Board's decision defeats Sudler's claim by application of the doctrine of collateral estoppel. The two Antitrust Act claims are also barred by statutory immunity.
In Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 93 (App. Div. 1983), we applied the doctrine of collateral estoppel against a medical doctor who had been denied full staff privileges by a hospital. After sustaining the hospital's actions, we applied the doctrine to bar the doctor from litigating her tort and antitrust claims against the individual defendants who were responsible for the hospital's action:
We hold that the judicial affirmation of the reasonableness and propriety of the hospital's actions toward plaintiff establishes the justifiability and lawfulness of defendants' actions, determines an essential part of each of plaintiff's conspiracy, malicious interference and antitrust claims against her, and therefore collaterally estops plaintiff from relitigating those matters. [Id. at 93]
The same reasoning applies here. The extensive proceedings before the Board fully afforded Sudler and Steiner their "day in court" under the collateral estoppel doctrine.
Sudler's claims of conspiracy to restrain trade and monopolistic practices prohibited by the Antitrust Act are barred by the Act itself:
No provisions of this act shall be construed to make illegal ... [t]he activities of any public utility... to the extent that such activities are subject to the jurisdiction of the Board of Public Utility Commissioners.... [N.J.S.A. 56:9-5b(3)]
*64 As we explained in State v. Scioscia, 200 N.J. Super. 28 (App. Div. 1985), certif. den. 101 N.J. 277 (1985):
the purpose of the "public utility" exemption is to prevent business entities from being subjected to conflicting sets of governmental regulations. In our view, the statutory exception is designed to obviate potential conflicts where a public utility is required or permitted by the BPU to engage in anti-competitive activities that would otherwise be proscribed by the Antitrust Act. [200 N.J. Super. at 39]
Here the Board expressly permitted the activity that Sudler claims violates the Act. By protecting anti-competitive activity that benefits a particular customer, the immunity necessarily protects not only the public utility but also the customer. The immunity protection therefore covers Hills as well as EDC.
Sudler's remaining points are clearly without merit. R. 2:11-3(e)(1)(E).
The decision of the Board of Public Utility Commissioners is affirmed. The order of the Law Division denying defendants' motion for a summary judgment is reversed.
NOTES
[1] The ordinance amendment received initial approval in the Law Division on March 20, 1981. After an appeal and remand to consider the impact of Mount Laurel II the court again approved the amendment. Allan-Deane Corp. v. Bedminster Tp., 205 N.J. Super. 87 (Law Div. 1985).