No. 90-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

THE TOWN OF ENNIS,

    Plaintiff and Appellant,

  -v-

EDGAR STEWART and MARTHA STEWART,

    Defendants and Respondents.

  and

THE TOWN OF ENNIS,

    Plaintiff and Appellant,

  -v-

PEARL DOYLE,

    Defendant and Respondent.

FILED

MAR -4 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Larry Jent, Bozeman, Montana

    For Respondent:

    Chester L. Jones; Jones & Hoffman; Virginia City,
Montana

Submitted on Briefs:  January 3, 1991

Decided:  March 4, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The plaintiff Town of Ennis appeals the order of the Fifth Judicial District Court, Madison County reversing convictions in Ennis Town Court and dismissing charges against the defendants Edgar and Martha Stewart and Pearl Doyle. The defendants were convicted in Ennis Town Court for refusing to hook up to the Ennis Water System in violation of town ordinances. We reverse the order of the District Court and uphold the convictions of the defendants.

The Town raises the following issues on appeal:

(1) Did the District Court err in determining that the defendants had a privacy right in their well granted by Article II Section 10 of the Montana Constitution?

(2) Did the District Court err in ruling that it is not a valid exercise of the police power of local governments to mandate connection to an existing city water supply?

The Stewarts, both in their 80's, have resided at their present residence since 1936. They have always supplied their water needs from a private well and electric pump located on their property. The Stewarts used the water for indoor consumption, washing and bathing as well as outdoor irrigation. The water is never used commercially or available to the public.

Pearl Doyle is an 83-year-old widow and the sister of Martha Stewart. She has resided at her present residence since June of 1949. Since 1949 her residence has been served by the same well and distribution system, for the same domestic purposes as the Stewarts. Neither Mrs. Doyle nor the Stewarts have ever

2

experienced any health problems traceable to the water system. Both premises are connected to the municipal sewer system.

The Town was incorporated in 1956. Thereafter, pursuant to the adoption of a series of ordinances, the Town made it mandatory for residences within the Town's city limits to hook up to the Town's water system, and forbade the interconnection of municipal water lines and private wells and the use of private well water for commercial and public use and use inside private residences. The ordinances allow residents to continue to use well water for watering lawns, gardens, irrigating, etc.

In the early 1960's, when the municipal water system was being installed, Mrs. Doyle's late husband requested that a stub be put on the main water line passing the Doyle residence so that the water system could be tied into the residence at some later date. Mr. Doyle also tendered the required fee for such purposes. The Town mayor refused to provide a stub or accept the fee because the Doyles were not going to immediately hook up to the water system.

Since the building of the original municipal water system in the 1960's, the Stewarts were never advised by any city official of the requirement to tie onto the system until 1987. The Town has made numerous attempts to persuade the defendants to tie their residences into the Town system, but the defendants have consistently refused to comply. The cost of tying into the water mains would be approximately $500.00 for each residence. In October of 1987, pursuant to Section 4.10.180 of the Ennis Municipal Code, a notice of non-compliance was delivered to each

of the defendants.

The Town filed complaints against the Stewarts and Mrs. Doyle for violating the ordinances on May 31, 1989 and June 28, 1989, respectively. All three defendants were convicted of the charges in Ennis Town Court On August 1, 1989.

The defendants appealed to District Court, and the case was submitted upon stipulated facts. On May 8, 1990, the District Court reversed the judgment of the Town Court and dismissed the charges against the defendants. The Town now appeals.

In its order, the District Court essentially concluded that the defendants have a privacy right to use a private well in their home for domestic purposes guaranteed by the Constitution, and that the Town's exercise of the police power was not valid in this case due to lack of a compelling state interest.

We disagree in both respects. The ordinance in question in this case provides in pertinent part:

> 4.10.010 <u>Town Water Lines Separate from Private Wells and Pumps</u>. There shall not be any cross-connections between the individual wells and pumps and the town water system. The line from the town water supply must be separate from that of the private well and pump.
> 4.10.020 <u>Wells and Pumps for Outside Water Only</u>. Present wells and pumps may be retained for outside water only, lawns, gardens, etc. All water inside residences, business places, public institutions, or for any commercial use must be town water.
>
> A. Anytime real property is sold which is presently using a well for inside water use, the property must be connected onto the town's water system prior to sale.

The privacy right referred to by the District Court is found at Article II, Section 10 of the Montana Constitution, which provides:

4

**Right of Privacy.** The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

In determining whether a particular alleged privacy interest warrants constitutional protection, this Court has adopted a two part test. Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 442, 649 P.2d 1283, 1287; accord Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. First, the test focuses on whether the person claiming the right has a subjective or actual expectation of privacy. Second, the test asks whether society is willing to recognize that subjective or actual expectation as reasonable. Flesh v. Board of Trustees of Joint School District No. 2 (1990), 241 Mont. 158, 165, 786 P.2d 4, 8; Engrav v. Cragun (1989), 236 Mont. 260, 263, 769 P.2d 1224, 1226.

In this case, we conclude that the type of interest being infringed is not of the kind sufficient for defendants to invoke the special protections of their privacy right. Under the Federal Constitution the privacy right has been extended to those rights which are fundamental or implicit in the concept of ordered liberty, such as rights involving activities relating to marriage, procreation, contraception, family relationships, child-rearing, and education. Roe v. Wade (1973), 410 U.S. 113, 152-3, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176-7. We have held that privacy rights of individuals in Montana are more substantial than the rights guaranteed in the United States Constitution. See, e.g., Montana Human Rights Division, 649 P.2d at 1286.

5

Admittedly, the defendants' right to privacy in this case protects their decision to drink whatever type of potable water they choose within their own home. However, a careful review of the ordinances in question here reveals that they do not proscribe such a decision. The ordinances simply require that the defendants, as residents of the Town of Ennis, be connected to the municipal water system and that water from this source be the only type available from the faucets inside their residence. The ordinances do not prevent the defendants from making the personal choice to drink commercially bottled water, for example, or from drinking their own well water from an outside spigot in a fashion similar to bottled water, as another example.

We conclude that the interest asserted by the defendants in this case--the right to pipe in and have available the type of water they choose--does not involve the kind of individual autonomy or freedom "from unwarranted governmental intrusion into matters so fundamentally affecting a person. . . ." necessary to invoke constitutional protection. See Eisenstadt v. Baird (1972), 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349, 362. Furthermore, where it may adversely effect the significant interest of the Town regarding the public health and welfare, the expectation of privacy the defendants may have in this regard is unreasonable. Flesh, 786 P.2d at 8, Engrav, 769 P.2d at 1226. Accordingly, because the right being asserted is not of constitutional magnitude the Town need not show a compelling interest to satisfy its ends; rather it need only demonstrate that

6

the ordinance bears a rational relationship to the achievement of a legitimate state interest. Art. II, Sec. 10, Mont.Const.; see, e.g., People v. Privatera (Cal. 1979), 591 P.2d 919, 921.

The defendants cite the case of City of Midway v. Midway Nursing & Convalescent Center, Inc. (Ga. 1973), 195 S.E.2d 452, for the proposition that a municipality has no authority to enact and enforce ordinances which are designed to compel everyone within the city to use its water system. Considerations of public policy lead us to disagree with the holding of Midway. Generally, a governmental entity may exercise its police powers in matters affecting public health and welfare. There is more recent authority in opposition to Midway holding that the enactment and enforcement of ordinances that compel citizens to connect to a municipal water system is within the scope of the police power:

> "It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. . . . [Citations omitted.] It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health."

> 227 U.S. at 308, 33 S.Ct. at 292.

> This court can find no meaningful distinction between mandatory sewer connections and mandatory water connections. . . .

Shrader v. Horton (W.D. Va. 1979), 471 F.Supp. 1236, 1243; affirmed in 626 F.2d 1163, 1165; quoting Hutchinson v. City of Valdosta (1913), 227 U.S. 303, 308, 33 S.Ct. 290, 292, 57 L.Ed. 520, 523.

7

The Shrader court relied in part on Weber City Sanitation Commission v. Craft (Va. 1955), 87 S.E.2d 153, where the court held that a sanitation commission's resolution requiring that abutting property owner's connect with the district's waterworks and abandon private subsurface water for personal use and consumption was a valid exercise of the police power. The court stated:

> So far as we know, the power of the State, under its police power, to provide for the health of its people, has never been questioned, but on the contrary, has been stressed as one of the powers which may be given the broadest application; and it is common knowledge that this power has been increasingly exercised, in keeping with advances made in the sciences of medicine and sanitation, in recent years. In these circumstances, courts are reluctant to place limits on what may be done in the interest of the health of a community, so long as unreasonable methods are not employed, nor the natural and constitutional rights of citizens invaded.
>
> . . .
>
> "It is, of course, settled that the protection of the public health is a valid object for the exercise of the police power. A pure water supply is so intimately connected with the health of the community that the provisions with regard to it are properly a part of the police power of the State * * *." 56 Am.Jur., Waterworks, § 76, page 981.

Weber, 87 S.E.2d at 157, 159. See also, e.g., McMahon v. City of Virginia Beach (Va. 1980), 267 S.Ed.2d 130.

In Montana, a local government with self-governing powers may exercise any power or provide any service except those specifically prohibited by the constitution, laws, or its charter. Art. XI, Sec. 6, Mont.Const.; §§ 7-1-101 and 7-1-102, MCA. An incorporated city or town without self-government powers has among its general powers "the powers of a municipal corporation and legislative,

8

administrative, and other powers provided or implied by law." Art. XI, Sec. 4(1)(a), Mont.Const. Such powers shall be liberally construed. Art. XI, Sec. 4(2), Mont.Const. The legislature has given municipalities broad general powers to construct and improve facilities necessary for operating viable water systems. See generally Title 7, Chapter 13, Parts 43 and 44, MCA. Cities and towns may establish sewage and water systems under the authority of § 7-13-4301, MCA. Section 7-13-4402 provides that "the city or town council has power to adopt, enter into, and carry out means for securing a supply of water for the use of a city or town or its inhabitants." Thus, regardless of whether it has a self-government charter, the enactment and enforcement of the ordinances in this case is clearly within the scope of the Town's general police power.

Regarding the exercise of this power, we adopt the reasoning of Shrader and Weber, quoted above. While the Town does not allege that there are immediate health threats arising from the use of private well water in Ennis, the potential for such problems always exists. A municipal water system is better suited to meet these health concerns and prevent potential health problems that could arise absent such a system. Furthermore, in small communities a water system may not be affordable unless a sufficient number of citizens connect to the system and pay the corresponding fee. Allowing some citizens to forgo connection to such a system indefinitely or until a health threat is imminent may make such a system unaffordable to the community and thereby defeat the purpose

of preventing potential health problems <u>before</u> they arise. Sound public policy considerations indicate that the ordinance in question here is rationally related to the legitimate purpose of providing a healthy and safe water supply.

The order of the District Court is

**REVERSED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice John Conway Harrison dissenting.


I dissent. I would choose to follow the Findings of Fact and Conclusions of Law of the District Judge who sat on this matter, and adopt the reasoning in his Memorandum of this case.

Judge Frank M. Davis in his Findings of Fact Nos. 2, 3, and 4 noted:

> 2. The Defendants, STEWARTS and DOYLE, are residents and property owners of the TOWN, and have been since as early as 1936. Both are in their '80s. Both have always utilized private water wells for domestic water in their homes. Both have refused the offered municipal water service. No formal demand by the TOWN was ever made upon them until 1987. This indicates to the Court that a succession of previous administrations may have conceded the principles set forth in this decision. In any case, the demand was refused and this action resulted.
>
> 3. There is an absence of any evidence that Defendants' private water well service is a violation of any established public health and sanitary standards. Indeed, the Court can find no compelling reason in the public interest for Defendants to abandon their private water source which has been in existence and used for over fifty years. The property serviced has been owned by Defendants or their immediate families during all this time.
>
> 4. From the stipulated facts, the Court can find only one reason for the TOWN requiring Defendants to utilize its water system and that is for the money, which as the Court will discuss in its Memorandum, is not a compelling state interest. There is no concern which could justify under any known principle of law the use of the TOWN'S police power.

Judge Davis stated in Conclusions of Law No. II:

> The Court concludes that under the findings herein made and as applied only to Defendants STEWARTS and DOYLE, that there is no compelling state interest mandating that these Defendants utilize the TOWN OF ENNIS municipal water system. To do so would be an invasion of Defendants' rights as guaranteed by Article II,

11

Section 10 of the 1972 Montana Constitution.

With these conclusions I most certainly agree.

Finally, Judge Davis' Memorandum notes:

It is clear to the Court that the TOWN OF ENNIS in the operation of its municipal water system is acting in a _proprietary_ capacity and not in the exercise of its police power. Indeed, under the ordinances which it seeks to invoke, its power is limited to simply terminating the service, and here the Defendants have no service to terminate.

The courts of this country, including the Supreme Court of the United States, have held generally that when the government enters the marketplace it divests itself of many of its sovereign powers. It becomes as the U.S. Supreme Court said in _Ohio v. Helvering_, 292 U.S. 360, 54 S.Ct. 725, 75 L.Ed. 1307, a "trader". The trader cannot abridge fundamental constitutional rights except on a showing of some compelling public need. Indeed, the public need must be shown even when the government is acting in its sovereign capacity. No public need, much less a _compelling_ need, has been shown in this case.

The TOWN'S water ordinances appear to be vague and contradictory. One seems to contemplate "grandfathering" a water user's right to use his well until the property is _sold_. It does not contemplate a transfer by gift or inheritance. Still another ordinance simply provides for notice of noncompliance. These ordinances _may_ be unconstitutionally vague, but in any case these particular Defendants are protected by not only the grandfather concept, but the general principles of constitutional law.

The Court would add that the TOWN'S goal of including all of its residents under the umbrella of its utility is a worthy administrative goal. In doing so, however, it cannot infringe and abridge fundamental constitutional rights, especially when it can show no compelling state interest. The TOWN'S dispute with STEWARTS and DOYLE will be solved in time, provided the contradictory and vague enforcement ordinances are clarified. In the interim, these Defendants should be allowed in their autumn years to use their private water source, as they have for half a century. (Emphasis in original.)

I would add that I am sure the Town of Ennis will not go broke

12

by not collecting the water revenues from these two long time citizens. I would affirm the decision of the District Court.

_John Conway Harrison_
                                Justice