730 A.2d 930

ROBERT KUSZNIKOW AND SUSAN KUSZNIKOW, PLAINTIFFS, v. TOWNSHIP COUNCIL OF THE TOWNSHIP OF STAFFORD AND THE STAFFORD TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided March 8, 1999.

*Joseph D. Youssouf,* for plaintiffs.

*Charles W. Hutchinson,* for defendant Township Council of the Township of Stafford (*Gilmore & Monahan,* attorneys).

*Gregory P. McGuckin,* for defendant Stafford Township Municipal Utilities Authority (*Dasti, Murphy & Wellerson, P.C.*).

SERPENTELLI, A.J.S.C.

This matter, which involves a novel issue for our New Jersey courts, came on for trial on January 27, 1999. Although the case had been listed for a plenary . trial, it was stipulated at the commencement of the proceedings that there were no genuine issues of fact in dispute. Indeed, the matters in controversy between the parties have been substantially narrowed over almost five years of litigation. This suit results from the installation of a municipal water system by the Stafford Township Municipal Utilities Authority (hereinafter "MUA"). Initially, the plaintiffs refused to connect to the water system. Ultimately, the Appellate Division sustained the finding of both the Municipal Court and the Superior Court that they must do so.

The narrow issue in this case is whether the plaintiffs, having now connected to the MUA water line in the street, must also connect their home to the lateral on their property and be precluded from allowing their well water to enter the house plumbing. The defendants concede that the plaintiffs remain free to use their well water for any purpose, provided that it is not interconnected with the MUA system serving their house. The defendants do not contend that the plaintiffs must cap their well but insist that the ordinance provides the power to prevent the interconnection of the well with the house plumbing so as to avoid the possible contamination of the public water supply. The parties also agree that there is no present evidence of pollution in the plaintiffs' well. Notwithstanding that fact, the defendants argue that any risk of contamination must be eliminated by prohibiting interconnection of the well water with the MUA water supply.

As mentioned, the parties have litigated almost continuously over the past five years. The matter once reached the Appellate Division and resulted in an unreported decision of January 8, 1998 (A–971–9473), which sustained the constitutionality of the ordinance creating the MUA. The court also upheld the right of Stafford Township to adopt an ordinance requiring mandatory connection to the municipal system. However, the opinion does not dispose of the question of whether the plaintiffs must thereafter connect their home to the lateral on their property and cease the use of well water through the house plumbing for domestic consumption or other purposes. It is that question alone which is in controversy before this court.

As noted, there has been no definitive ruling in our State regarding this issue. However, while it is a novel matter within our jurisdiction, there is persuasive precedent in our federal circuit court supported by decisions in other states so directly on point that judicial economy suggests there is no need for a lengthy independent analysis of the controversy. In particular, the case of *Stern v. Halligan, et al.,* 158 *F*.3d 729 (3rd Cir.1998) is squarely on point. Indeed, *Stern* involved a neighboring municipality, the

Township of Berkeley, with an ordinance very similar in scope to Stafford Township's regulations.

Berkeley Township adopted an ordinance requiring property owners to connect to the municipal system and to permanently disconnect their private wells from the potable water plumbing supply of their buildings. The plaintiffs in that action received a notice that they must connect and, after failing to do so, were served with summonses for violating the ordinance. The plaintiffs brought an action claiming the mandatory hook up and connection violated their constitutional rights and general right to be free from government action.

In addressing the ordinance provision requiring connection to the municipal water system, the court found that general economic and social welfare legislation may be struck down only if it fails to meet a minimum rationality standard. The court concluded that the plaintiffs failed to meet their burden since the protection of health, safety and general welfare, which was the goal of the challenged ordinance, was plainly in the public interest. The court justified its conclusion by finding the Legislature may rationally determine that a public water supply is the simplest and safest solution for its citizenry, even without proof of danger to each and every affected person.

In support of its decision, the *Stern* court stated that "the overwhelming majority of courts that have addressed the issue have found that mandatory connection to public water supply is a legitimate exercise of police power." *Id.* at 731. A long string citation followed, including a reference to the unreported decision in *State of New Jersey v. Kusznikow*, A–971–94T3, (App.Div., January 8, 1996). The court went on to distinguish the only contrary authority, *City of Midway v. Midway Nursing and Convalescent Center, Inc.*, 230 *Ga.* 77, 195 *S.E.*2d 452 (Ga.1973), by finding the Georgia enabling legislation required that the power granted to municipalities be strictly construed whereas the federal court was obligated to evaluate the ordinance in terms of whether

it met the minimum standard of rationality required of social welfare legislation under the due process clause.

The court then turned to the very issue involved in this matter. It said:

> The plaintiffs additionally claim that their case is distinct from other mandatory connection cases because the ordinance at issue may require them to cap or disconnect their wells in addition to requiring them to hook up to municipal water. We need not interpret the ordinance at this level of detail, however, because this slight additional burden makes no difference to the outcome of this case. Requiring disconnection of indoor water from a potentially dangerous source is part of the general protective legislative scheme and works no unjustifiable harm on the plaintiffs. *See Renne v. Township of Waterford,* 73 *Mich.App.* 685, 252 *N.W.2d* 842, 846 (Mich.Ct.App.1977) (upholding a sewer connection requirement and a ban on the use of a functioning septic tank); *Weber City Sanitation Comm'n [v. Craft,* 196 *Va.* 1140, 87 *S.E.2d* 153 (1955)]* (upholding a mandatory water connection and well disconnection ordinance); *cf. Andres v. City of Perrysburg,* 47 *Ohio App.*3d 51, 546 *N.E.2d* 1377, 1381 (Ohio App.Ct.1988) (rejecting a takings claim for a mandatory sewer connection where local law also required all connected property to be annexed by the city).
>
> Consequently, plaintiffs have no right to have their wells service their houses, even though the township has not proven that the wells are dangerous. Indeed, even if the plaintiffs can prove the current safety of their water, they would not be exempt from the generally applicable connection requirement. Mere over- or underinclusiveness will not invalidate social welfare regulation so long as the state action represents a rational response to a legitimate problem. *See Lindsey Coal Mining Co. v. Chater,* 90 *F.3d* 688, 694–95 (3rd Cir.1996). Mandatory connections to public utilities are classic examples of social welfare regulations that merely adjust the burdens and benefits of life in the modern world. *[Stern, supra,* 158 *F.3d* at 733–34.]

At trial, the plaintiffs argued that the real, underlying justification for the mandatory connection requirement was not so much the public's health and welfare but more specifically, the fiscal constraints of installing and operating a community-wide system. They asserted that the ordinance compelled everyone to connect both in the street and to their home to assure the MUA of an adequate revenue stream to accomplish those goals. The defendants do not deny that revenue from usage is an important element of their rating structure. If homeowners were free to avoid at least the basic usage charge by refusing to connect their homes to the lateral on their property, the rates charged to those who connect might be driven higher. Additionally, funding

sources could be imperiled if the MUA was not able to give assurances of this income resource.

However, even if finances are at the heart of the ordinance provisions, the plaintiffs' cause is not strengthened. Our courts have recognized that such monetary considerations are legitimate and rationale elements related to the installation of a utility system. Thus, in *First Peoples Bank of New Jersey v. Medford Tp.*, 126 *N.J.* 413, 599 *A*.2d 1248 (1991), the Supreme Court said:

> Expansion of a sewage treatment plant to serve future development is both costly and uncertain. In the early stages, the number of users may not suffice to bear the capital cost of construction. Borrowed capital may not be available without assurance of the success of the development to be served by the plant. See *Sudler, supra*, 219 *N.J.Super.* at 56, 529 *A*.2d 1022 (discussing problems in constructing and financing sewage treatment plants).
>
> Confronted with a lack of sewage capacity and concerned about its ability to finance construction, the Township devised a system to raise the funds to finance the expansion of plant capacity. The Township's concern about raising revenue is reflected in the fee schedule, .... [T]he plan is rationally related to a legitimate governmental purpose, the financing and allocation of sewage capacity. [*Id.* at 419, 599 *A*.2d 1248.]

■ The plaintiffs have also argued that to deny them the use of their well constitutes a taking. While *Stern* did not decide that issue, it did suggest a resolution which this court adopts. In footnote 7 at page 734 of the opinion it said:

> Such a claim would be meritless in any event. The Supreme Court has noted that, after a finding that due process has not been violated, "it would be surprising indeed to discover a [regulatory] taking," because the relevant analysis is so similar. Moreover, regulatory taking, requiring just compensation therefor, occurs when there has been a deprivation of 'all economically beneficial use' of property.... There is no indication that the plaintiffs' wells constitute all (or, indeed, any) of the economic value of their land. The value of the water pipes running from the plaintiffs' wells to their houses and of the limited amount of interior plumbing affected by the disconnection does not begin to approach the total destruction of value required before we will find a taking. [158 *F*.3d at 734. (citations omitted).]

■ Finally, to the extent that the plaintiffs argue they are being forced into a contract in violation of federal and state constitutional provisions prohibiting laws impairing the obligation of contracts, the *Stern* case is also instructive. There the court said:

The plaintiffs may be required to obtain their water service from BTMUA and to pay for that service just as they may be required to adhere to other laws that, one way or another, cost money.

... Therefore, upon connection, BTMUA is authorized to charge the owners for connection costs and water used, whether they want it or not.

. . . .

Moreover, New Jersey law is clear that public utilities may require citizens to pay fees even if the citizens do not contract with the utilities. [Citing *Airwick Industries, Inc. v. Carlstadt Sewerage Authority*, 57 N.J. 107, 270 A.2d 18 (1970).] [*Id.* at 735.]

Clearly, the *Stern* decision is not binding authority on this court. However, the court agrees with both its rationale and holding as well as the authority which *Stern* cites in support of its conclusion. Therefore, the court finds that the plaintiffs must connect their dwelling to the municipal water system and pay those fees assessed for the usage of the water. If the plaintiffs choose not to use any of the municipal water and usage is metered, they will presumably pay the basic usage fee applicable to all individuals. It should be emphasized, however, that the plaintiffs are not required to cap or discontinue the use of their well for purposes unrelated to the plumbing in their home. Theoretically, they could choose to drink the well water, use it for cooking or for other purposes in addition to its more likely use in lawn sprinkling.

The court is not insensitive to the plaintiffs' philosophical differences with the law. Living in a civilized society translates to the surrender of a certain amount of individual freedom for the common good. A balance must be struck if the legitimate interests of society are to be achieved. As the *Stern* case put it:

One might sympathize with the plaintiff's sincere desire to maintain their own wells for their private use. Their grievances must, however, be addressed to the political branches, for we have no authority to upset rational, nondiscriminatory legislation addressing potential dangers to the health and safety of the community. [*Id.* at 736.]

Therefore, the plaintiffs' complaint is dismissed.