THE VILLAGE OF ALGONQUIN, Plaintiff-Appellee, v. RANDY TIEDEL, Defendant-Appellant.—THE VILLAGE OF ALGONQUIN, Plaintiff-Appellee, v. MARK BARZYK, Defendant-Appellant.

Second District   Nos. 2—02—1383, 2—02—1384 cons.

Opinion filed December 31, 2003.

230

Curt P. Rehberg and Doreen T. Paluch, both of Curt P. Rehberg & Associates, P.C., of Crystal Lake, for appellants.

Robert W. Fetzner and Michael J. Lechner, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee.

JUSTICE BYRNE delivered the opinion of the court:
In these consolidated appeals, defendants, Randy Tiedel and Mark Barzyk, appeal the judgment of the circuit court of McHenry County,

finding them guilty of failing to obtain permits to hook up to the water system of the Village of Algonquin (Village) in violation of the Village ordinance. We affirm.

The following facts are not in dispute. Defendants are residents of the Algonquin Hills subdivision in Algonquin. On February 2, 2001, each defendant was issued a complaint for failing to obtain a permit by February 1, 2001, to connect to the Village's water system, in violation of "Section 21 Chapter 6A" of the Algonquin Municipal Code. "Section 21 Chapter 6A" of the Algonquin Municipal Code, under which defendants were charged, is generally cited as section 6A.21. See Algonquin Municipal Code § 6A.21 (1997).

On July 10, 2002, defendants filed separate motions to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)). Defendants alleged that section 6A.21 did not apply to them because it was passed in 1997 and was applicable only to homeowners who had a public water main available then, and no water main existed or was located next to their properties until 2000. Defendants further alleged that the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 2002)) did not give municipalities the power to require private homeowners to abandon private wells and connect to the water supplies provided by the municipalities. Defendants also maintained that their wells were not contaminated and had not contaminated any surrounding wells and, consequently, mandatory connection was inappropriate. The trial court disagreed and denied the motions to dismiss.

At trial, the parties stipulated to the following: (1) section 6A.21 was passed and in effect as of 1997; (2) if called, a Village official would testify that the Village municipal water supply is superior to a private well; (3) a water main was within 300 feet of defendants' properties in 1999; (4) defendants are receiving the benefits of fire protection in that fire hydrants are now located in their neighborhood; (5) other private wells in the area have failed, due either to lack of water or to contamination; (6) neither defendant had received notice from the Village that his well had been maintained in an unsanitary manner; and (7) Barczyk's well had not been tested for 13 years and Tiedel's had not been tested for 2 years.

The trial court found that protecting the public health and general welfare of the residents of a municipality is a valid exercise of police power and that section 6A.21 was rationally related to the legitimate purpose of protecting the health and safety of the residents of the Village. Accordingly, the court concluded that section 6A.21 was constitutional. The court further found defendants to be in violation of the ordinance. Defendants timely appeal.

■ On appeal, defendants contend that the trial court erred in denying their section 2—619 motions to dismiss. In particular, defendants assert, as they did below, that section 6A.21 does not apply to them, the Illinois Municipal Code does not give municipalities the power to require abandonment of private wells and connection to the municipal water supply, and a municipality may not require a private homeowner to receive or use the water furnished by a municipality. On an appeal from the denial of a section 2—619 motion to dismiss, our review is de novo. In re Chicago Flood Litigation, 176 Ill. 2d 179, 189 (1997).

■ Defendants argue that section 6A.21 of the Algonquin Municipal Code does not apply to them because it was passed in 1997 and it does not refer to or anticipate a water main that was constructed in 2000. We reject defendants' argument for several reasons. First, we observe that section 6A.21 is divided into four subsections. Of relevance to this appeal are subsections (A) and (B). In support of their argument, defendants rely solely on subsection (A) of the ordinance, which provides, in relevant part: "The owners of all houses, buildings, or properties situated within the Village in which there is *now located* a public water main, shall be required to make connection to the public water main." (Emphasis added.) Algonquin Municipal Code § 6A.21(A) (1997). Defendants interpret the phrase "now located" to mean that the ordinance is applicable only to homeowners who had a public water main available to them in 1997, when the ordinance was passed. However, tying the phrase "now located" to the date the ordinance was passed would, in effect, render the ordinance inapplicable to any future growth of the Village and would force the Village to pass a new ordinance each time the public water main is extended. Had the Village intended only those homeowners with access to a public water main in 1997 to connect to it, it would have specifically stated so in the ordinance. It is presumed that the legislature did not intend an absurd or unjust result. See In re Marriage of Murphy, 203 Ill. 2d 212, 219 (2003). Moreover, a statute should be read as a whole and construed so that no word, phrase, or section is rendered superfluous or meaningless. Potts v. Fitzgerald, 336 Ill. App. 3d 500, 504 (2003). Defendants' argument ignores basic guiding principles of statutory construction.

Even assuming defendants' interpretation of subsection (A) is correct, defendants disregard subsection (B) of section 6A.21. Section 6A.21(B) provides that the owner of property situated within the Village and abutting any street "in which a public water main is within 300 feet of the nearest property line of the property shall be required to extend the public water main to and across the frontage of the

property and make connection as herein provided." Algonquin Municipal Code § 6A.21(B) (1997). Defendants stipulated at trial that a public water main was located within 300 feet of their property lines. Their stipulation admits a violation of the Village code. Defendants cannot ignore that they are in violation of the Village code by addressing only subsection (A). A statute should be read as a whole with all relevant parts considered. *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). We find their argument to be misleading at best.

■ Defendants argue that the Illinois Municipal Code does not give the Village the authority to require homeowners to abandon private wells and to connect to a public water system. In particular, defendants rely on section 11—125—1 of the Illinois Municipal Code (65 ILCS 5/11—125—1 (West 2002)), which states that "[t]he corporate authorities in each city and village *may* (1) provide for a supply of water by the boring of artesian wells, or by the digging, construction, or regulation of wells, pumps, cisterns, reservoirs, or waterworks." (Emphasis added.)

As in their argument above, defendants focus exclusively on one section of an entire article and propose an interpretation that is both out of context and against canons of statutory construction. First, defendants ignore the general rule in Illinois that the authority for the passage of an ordinance need not be wholly derived from a single grant of power by the legislature, but may be derived from several different grants of power. *Father Basil's Lodge, Inc. v. City of Chicago*, 393 Ill. 246, 252 (1946). Second, defendants disregard that each part or section of a legislative act must be considered in connection with every other part or section, and not alone, in determining the purpose or intent of the legislature. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989).

Here, when the relevant sections of the legislative act are read together, it has the cumulative effect of granting municipalities, including the Village, the power to both provide and require connection to municipal water systems. Further, section 1—9—1 of the Illinois Municipal Code (65 ILCS 5/1—9—1 (West 2002)) states that the "provisions of this Code shall be cumulative in effect." Further, section 11—139—8 provides municipalities with the power to:

"(1) make, enact, and enforce all needful rules and regulations for the acquisition, construction, extension, improvement, management, and maintenance of the combined waterworks and sewerage system of the municipality and for the use thereof, (2) make, enact, and enforce all needful rules, regulations, and ordinances for the care and protection of such a system, which may be conducive to the preservation of the public health, comfort, and convenience and

to rendering the water supply of the municipality pure and the sewerage harmless insofar as it is reasonably possible to do so, and (3) charge the inhabitants thereof a reasonable compensation for the use and service of the combined waterworks and sewerage system and to establish rates for that purpose." 65 ILCS 5/11—139—8 (West 2002).

Accordingly, we reject this argument also.

■ Defendants next argue that they cannot be forced to receive or use the water furnished absent a contract or some showing of a compelling public need. Defendants assert that there is no evidence that they ever contracted for the Village to supply water. Further, defendants contend that the Village did not show any compelling need to require a connection because the trial court found that their wells were not contaminated and they had not received notice from the Village that their wells were maintained in an unsanitary manner. Defendants also contend that the ordinance was not a proper exercise of the Village's police power, yet offer no support for this contention. Underlying all of these claims, it is apparent, defendants essentially advance arguments based on privacy rights and the general right to be free from government action, but since they do not identify precisely what parts of the constitution are implicated, we find no basis to support their claims.

The trial court found that the ordinance in question is a valid exercise of the Village's police power. We agree. Although there are no cases in Illinois concerning the issue of whether mandatory connection to a municipal water supply is a valid exercise of police power, we first point out that Illinois courts have found that mandatory connection to a municipal sewer system is a valid exercise of police power. The supreme court, in *City of Nokomis v. Sullivan*, 14 Ill. 2d 417, 421 (1958), quoting *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308, 57 L. Ed. 520, 523, 33 S. Ct. 290, 292 (1913), observed that " '[i]t is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith.' " The court held that the defendants were not deprived of due process because they were required to connect with the city sewer system. *City of Nokomis*, 14 Ill. 2d at 423. We perceive no meaningful distinction between mandatory sewer connections and mandatory water connections. See *Stern v. Halligan*, 158 F.3d 729 (3rd Cir. 1998); *Shrader v. Horton*, 471 F. Supp. 1236 (W.D. Va. 1979).

Cases from other jurisdictions that have addressed issues similar to those advanced by defendants here have overwhelmingly held that the requirement of mandatory abandonment of private wells and connection to a municipal water supply is a legitimate exercise of police

power. See, *e.g.*, *Shrader*, 471 F. Supp. 1236; *Lepre v. D'Iberville Water & Sewer Dist.*, 376 So. 2d 191 (Miss. 1979); *Town of Ennis v. Stewart*, 247 Mont. 355, 807 P.2d 179 (1991); *Kusznikow v. Township Council*, 322 N.J. Super. 323, 730 A.2d 930 (1999); *Rupp v. Grantsville City*, 610 P.2d 338 (Utah 1980); *Tidewater Ass'n of Homebuilders, Inc. v. City of Virginia Beach*, 241 Va. 114, 400 S.E.2d 523 (1991).

We find *Stern* particularly instructive. In that case, the plaintiffs contested the mandatory connection ordinance, raising arguments based on substantive due process, takings, and contract claims. The court noted that, when general economic and social welfare legislation is alleged to violate substantive due process, it should be struck down only when it fails to meet a minimum rationality standard, which is an extremely difficult standard for a plaintiff to meet. *Stern*, 158 F.3d at 731. The court concluded that the plaintiff failed to meet this burden.

The court then recognized the myriad problems caused by private wells, including the potential for chemical infiltration, ease of contamination compared to a public water supply system, and lack of proper monitoring. The court believed that these potential harms provided ample justification for the government to safeguard its citizens. Because pure water is a precondition for human health, the court found that regulating the water supply is a basic and legitimate governmental activity. *Stern*, 158 F.3d at 732. Further, because a "municipal water supply replaces a myriad of private water sources that may be unmonitored or, at best, difficult, expensive, and inefficient to monitor," the court held that a "legislature may rationally conclude that a public water supply is the simplest and safest solution for its citizenry without proof of danger to each and every affected person. The danger is significant, the burden of connecting to nearby waterlines is not great, and the costs and benefits of such legislation are widely shared throughout the area of service." *Stern*, 158 F.3d at 732.

Regarding defendants' argument in the present appeal that they should not be required to hook up to the municipal water system where there is no evidence of contamination to their wells and where to do so unlawfully forces them into contractual obligations, *Stern* is also instructive. In rejecting the argument that protective measures be limited to actions taken after a crisis has arisen or a catastrophic disaster has struck, the court pointed out that, even though the parties may stipulate that their wells are currently safe, a local governing body must necessarily enjoy broad discretionary powers to protect the public health and general welfare of its residents and must anticipate the potential for problems that may arise. *Stern*, 158 F.3d at 733; see

*Town of Ennis*, 247 Mont. at 361, 807 P.2d at 183 (potential for such problems always exists); see also *Citizens for Personal Water Rights v. Borough of Hughesville*, 815 A.2d 15 (Pa. Commw. 2002); *McMahon v. City of Virginia Beach*, 221 Va. 102, 267 S.E.2d 130 (1980).

In rejecting the plaintiffs' contract claim, the *Stern* court reasoned that government is not required to deal with citizens on a purely contractual basis where the state action represents a rational response to a legitimate problem, as the mandatory connection cases demonstrate. The court further reasoned that the plaintiffs "may be required to obtain their water service from [the local governing authority] and to pay for that service just as they may be required to adhere to other laws that, one way or another cost money. The only forced contract is the broader social contract, which is part of the nation's policy and as such is unchallengeable here." *Stern*, 158 F.3d at 735; see also *Kusznikow v. Township Council*, 322 N.J. Super. 323, 730 A.2d 930 (1999) (denying the contract-based argument based on *Stern*'s analysis). We agree with both the rationale and holding in *Stern* as well as with the authority *Stern* cites in support of its conclusions.

Citing the dissenting opinion from *Town of Ennis*, 247 Mont. at 363, 807 P.2d at 184 (Harrison, J., dissenting), defendants further assert that, because their wells are not contaminated or maintained in an unsanitary manner, the Village divests itself of its sovereign powers and enters the marketplace acting in a proprietary capacity, or in the capacity of a "trader," and not in the exercise of its police power by requiring defendants to connect to the municipal water system. As pointed out above, however, the Village is not acting in a proprietary manner, or as a "trader." Rather, the Village is acting pursuant to the power granted to it by the legislature and by the valid exercise of a legitimate governmental purpose.

The exercise of police power is presumed to be constitutionally valid. *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529, 3 L. Ed. 2d 1003, 1009-10, 79 S. Ct. 962, 967 (1959). The party contending that an ordinance is not a valid exercise of police power has the burden of proving that the ordinance is unreasonable. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 596, 8 L. Ed. 2d 130, 135, 82 S. Ct. 987, 991 (1962). Here, defendants have failed to raise any argument to demonstrate that the ordinance at issue is not rationally related to a legitimate purpose, and therefore, the ordinance must stand. Accordingly, we hold that the Village can mandate that defendants connect to the municipal water system and require that they pay for the service.

■ Defendants next argue, for the first time on appeal, that their wells constitute a legal nonconforming use. An issue not raised in the trial court cannot be raised for the first time on review and is deemed

waived. *Village of Algonquin v. Village of Barrington Hills*, 254 Ill. App. 3d 324, 328 (1993). Because defendants are alleging for the first time an issue that was not presented to the trial court, we find that defendants have waived this issue.

Incorporating the arguments set forth within the first contention that the trial court erred in dismissing their section 2—619 motions, defendants last argue that the trial court erred in finding that they violated section 6A.21 of the Algonquin Municipal Code because the ordinance did not affect defendants' existing wells, the ordinance was not a proper exercise of the Village's authority under the Illinois Municipal Code, and the ordinance was not a lawful exercise of the Village's police power. Because we previously rejected these arguments, we need not address them again.

In sum, we find that the Village had a rational basis to enact section 6A.21, and the ordinance is rationally related to the legitimate government purpose of protecting the health, safety, and general welfare of its residents. Defendants have failed to demonstrate that the ordinance is not rationally related to that purpose. The ordinance, which is presumed valid, must stand. Further, because defendants stipulated that a water main is located within 300 feet of their respective properties, they admit a violation of section 6A.21(B). Accordingly, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.