2015 IL App (1st) 133620

FIFTH DIVISION
March 31, 2015

No. 1-13-3620

|  |  |  |
|---|---|---|
| MACK INDUSTRIES, LTD., | ) | Appeal from the |
|  | ) | Circuit Court of |
|  | ) | Cook County |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | No. 12 CH 35480 |
|  | ) |  |
| THE VILLAGE OF DOLTON and BERT HERZOG, | ) |  |
|  | ) | Honorable |
| Defendants-Appellees. | ) | Thomas B. Allen, |
|  | ) | Judge Presiding. |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Palmer concurred in the judgment and opinion.
Justice Gordon concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    Plaintiff Mack Industries, Ltd. (Mack), appeals an order of the circuit court of Cook

County dismissing its verified amended complaint against defendants Village of Dolton (Village)

and Bert Herzog (Herzog).  On appeal, Mack contends the circuit court erred in dismissing three

of the four counts of the verified amended complaint: (1) seeking a declaratory judgment; (2)

alleging breach of contract by the Village; and (3) alleging willful and wanton, retaliatory

misconduct by Herzog as the Village's manager.  For the following reasons, the judgment of the

circuit court is affirmed.

¶ 2                                BACKGROUND

¶ 3    The record on appeal discloses that on September 20, 2012, Mack filed a verified

complaint against the Village, containing the following allegations. Mack is the owner and manager of approximately 195 single-family homes (Mack properties) in the Village, a home rule municipality. Mack's complaint primarily arises out of the Village's provision of water service.

¶ 4    At all times relevant to the complaint, the Village exercised control over the supply of water to residential properties within the Village. A Village ordinance[1] prohibited private companies and individuals from supplying water to any building, structure or premises into which water service is introduced. A Village ordinance also provided that water meter readings were to be taken every three months. If no one was present on the premises, the water meter reader was required to leave a United States postal card for the customer to record the water usage and mail the reading to the Village clerk. If no postal card was returned to the Village clerk within 10 days of a second meter reading, premises against which charges remained outstanding "may be considered for 'red tagging' in preparation for 'shut off' of water to the premises." After the expiration of the time for payment as specified by ordinance, a list was required to be compiled of those premises with unpaid charges and the ordinance provided such

---

[1] Although Mack's complaint quoted various purported Village ordinances, the pleading did not indicate when the purported ordinances were adopted. The Village's motion to dismiss Mack's verified amended complaint attached copies of the purported ordinances as exhibits, but also without indicating when the purported ordinances were adopted. During oral argument, the parties did not dispute the substance of the Village's ordinances or that the purported ordinances were in effect during the period of the dispute at issue. It should be noted, however, that the provision regarding "red tagging" is denoted as a "proposed ordinance" in the materials submitted to this court.

premises "shall be authorized for 'red tagging' and 'shut off.' " The ordinance required the Village clerk to send notice by mail to the owner of premises scheduled for "red tagging," specifying the day and time the meter would be "red tagged" and water service would be shut off. By ordinance, owners and users of water service were jointly and severally liable for water charges. The ordinance further provided that if water charges were not paid within 60 days of the issuance of a bill, the charges would be deemed delinquent and constitute a lien on the real estate to which the service was supplied. The ordinance additionally provided, however, that the Village clerk could refrain from filing sworn statements regarding these liens with the recorder of deeds in Cook County if the Village proposed to sue the owner, occupant or user of the real estate in a civil action. Mack required its lessees to be responsible for the payment of water bills.

¶ 5    Mack alleged that the stated practice of the Village's water department was to flag properties for disconnection of water service once a bill was more than 30 to 60 days overdue. If a payment was not made after a notice of termination, service would be disconnected. This practice allegedly applied to unpaid water bills in excess of $150. In addition, the Village entered into payment plans with tenants relating to water service, but required the tenant or owner to make an initial payment of at least 60% of the unpaid balance.

¶ 6    In the late summer of 2010, the Village allegedly ceased enforcing its water service ordinances with respect to the majority of the Mack properties, thereby failing to send notices of delinquency, "red tag" properties, and disconnect water service. In several instances, water service was not disconnected until the lessee vacated the property, leaving Mack solely responsible for the unpaid charges and a fee for reconnection of service. In many cases, the unpaid water bills on a property exceeded $700. In some instances, the Village agreed to payment plans with Mack's lessees, under which only nominal payments were tendered to the

Village, without notice to or the agreement of Mack.

¶ 7    Mack further alleged the Village routinely ignored requests to send notices of disconnection to Mack's delinquent properties when the bills were 60 days overdue.  In September 2010, Mack commenced corresponding with the Village about the difficulties Mack experienced regarding the lack of enforcement of the Village water ordinances.  In January 2012, Mack also discussed the issue with the Village counsel, who promised prompt action.  From August 2010 through September 2012, Mack was forced to pay in excess of $18,000 in water charges that accrued after Mack requested disconnection of services.  Mack estimated it would be forced to remit in excess of $20,000 of water charges as of the date the complaint was filed, and further charges would continue to accrue until the issue was resolved.  In March 2011, the Village commenced denying rental occupancy permits to properties with unpaid water charges, thereby preventing Mack from establishing new tenancies.

¶ 8    In count I of the verified complaint, Mack sought a judgment declaring the Village's pattern and practices were not in compliance with the terms of the Village ordinance relating to water service by failing to: (1) conduct a second meter reading or leave the appropriate notices; (2) "red tag" premises after notice was provided; and (3) disconnect water service at properties more than 60 days delinquent in payment.  Mack also sought an award of attorney fees.  In count II of the verified complaint, Mack alleged the Village breached a contract to provide water service to property owners.  Mack asserted the contract was created as a matter of law by the ordinance establishing the Village as the sole provider of water service.  In count III of the verified complaint, Mack sought an injunction against retaliation by the Village.  Mack alleged that after it provided the Village with a draft copy of its verified complaint in July 2012, the Village: (1) contrary to its prior practice, commenced issuing citations regarding various Mack

properties without providing an opportunity to cure alleged violations; (2) failed or refused to issue a letter certifying one of the Mack properties as destroyed by fire, thereby precluding Mack from obtaining remediation of asbestos on that property; and (3) arbitrarily ordered reinspections of Mack properties and refused to recertify at least 16 Mack properties, based on a need to review paperwork regarding those properties.

¶ 9     On December 27, 2012, the Village filed a motion to dismiss Mack's verified complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)).[2] The Village first contended counts I and II of Mack's verified complaint must be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)), arguing the Village is immune from liability for failing to enforce its own ordinances, pursuant to section 2-103 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/2-103 (West 2010)). The Village also contended count III of Mack's verified complaint must be dismissed pursuant to section 2-619 of the Code, arguing the Village is immune from liability for failing to issue permits or certificates, pursuant to section 2-104 of the Tort Immunity Act (745 ILCS 10/2-104 (West 2010)). The Village further argued Mack's verified complaint must be dismissed in its entirety pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)), arguing all three counts failed to state a claim for which relief may be granted.

¶ 10     On January 9, 2013, Mack filed a motion for leave to file an amended complaint. On January 16, 2013, the circuit court entered an order granting Mack leave to file its amended

---

[2] The caption of the Village's motion refers to dismissing Mack's first amended complaint, but the body of the motion and the complaint attached as an exhibit to the motion establish the motion was directed to Mack's initial verified complaint.

complaint *instanter*.

¶ 11    On January 17, 2013, Mack filed a verified amended complaint adding Herzog as a defendant.  The factual allegations of the verified amended complaint were substantially similar to Mack's initial complaint, although Mack only claimed 151 Mack properties were located within the Village.  Mack also alleged it was required to pay exorbitant water bills regarding 28 of these properties.  Mack further alleged that on numerous occasions, the Village refused to correct overcharges after Mack notified the Village regarding its problems with water service.  Mack additionally alleged it was required to pay a $500 water charge for a property it purchased in September 2012.  Moreover, Mack alleged that commencing in September 2012, the Village and Herzog: (1) refused to provide police service to Mack property managers complaining about the criminal activity of Mack's lessees, and in one case refused to provide fire protection services; (2) arbitrarily changed rental occupancy inspection deposit amounts; (3) required Mack to replace water meters at a cost of $300 to $400 per property as a condition of the sale of 65 Mack properties to an investor; (4) required Mack's lessees to pay high water bill balances incurred by prior lessees; (5) disconnected water service to Mack properties that had not accrued delinquent water charges; (6) refused to timely connect water services at one of its properties; and (7) refused to speak to Mack employees or agents regarding these issues.

¶ 12    The first three counts of Mack's verified amended complaint asserted the same causes of action as the initial complaint.  Count IV of the verified amended complaint sought damages against Herzog for his alleged role in the retaliation against Mack.  The verified amended complaint alleged Herzog had supervisory authority over the Village's water and building departments.  Mack also alleged that on numerous occasions, Herzog informed Mack principal Jack McClelland that the Village's actions obstructing Mack's business were Mack's fault "for

getting the lawyers involved."

¶ 13    On February 14, 2013, the Village and Herzog filed a motion to dismiss Mack's verified amended complaint pursuant to section 2-619.1 of the Code.  Similar to the Village's prior motion to dismiss, the Village and Herzog contended counts I and II of Mack's verified amended complaint must be dismissed pursuant to section 2-619 of the Code on the ground the Village is immune from liability for failing to enforce its own ordinances, pursuant to section 2-103 Tort Immunity Act.  The Village and Herzog also contended counts III and IV of Mack's verified amended complaint must be dismissed pursuant to section 2-619 of the Code, arguing the Village and Herzog were immune from liability for failing to issue permits or certificates, and for failing to provide police or fire protection, pursuant to sections 2-104, 4-102, and 5-102 of the Tort Immunity Act (745 ILCS 10/2-104, 4-102, 5-102 (West 2010)).  The Village and Herzog further argued counts I, II and III of Mack's verified complaint must be dismissed pursuant to section 2-615 of the Code, arguing that these three counts failed to state a claim for which relief may be granted.  Lastly, the Village and Herzog argued Mack's requests for attorney fees must be stricken as unauthorized by statute or contract.

¶ 14    On March 22, 2013, Mack filed a response to the motion to dismiss the verified amended complaint.  Mack argued the Village's provision of water services constituted a valid and enforceable contract.  Mack also argued the Tort Immunity Act did not apply to its adequately stated claims for breach of contract claims and willful and wanton conduct.  On April 16, 2013, the Village and Herzog filed a short reply in support of their motion to dismiss, largely reiterating their prior arguments.

7

1-13-3620

¶ 15    On October 23, 2013, following a hearing on the matter, the circuit court entered an order granting the motion to dismiss Mack's verified amended complaint. On November 13, 2013, Mack filed a timely notice of appeal to this court.

¶ 16                                ANALYSIS

¶ 17    On appeal, Mack contends the circuit court erred in dismissing counts I, II and IV of its verified first amended complaint.[3] Mack's verified amended complaint was dismissed pursuant to a motion brought under section 2-619.1 of the Code, which permits section 2-615 and section 2-619 motions to be filed together as a single motion, divided into parts which are limited to and specify the single section of the Code under which relief is sought. 735 ILCS 5/2-619.1 (West 2012). In this case, the circuit court did not indicate under which section of the Code it dismissed each of the counts of Mack's verified amended complaint. The circuit court, however, may be affirmed on any basis that appears in the record. *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998).

¶ 18    A motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). When ruling on a section 2-615 motion, the relevant question is whether the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). A motion to dismiss should not be granted "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009).

_____

[3] The dismissal of count III of the verified first amended complaint is not at issue in this appeal.

8

¶ 19    In contrast, a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)) admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters which defeat the plaintiff's claims. *Russell v. Kinney Contractors, Inc.*, 342 Ill. App. 3d 666, 670 (2003).  In this case, The Village and Herzog rely on various provisions of the Tort Immunity Act.  "Undoubtedly, the existence of tort immunity may be raised in a section 2-619(a)(9) motion to dismiss." *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008).

¶ 20    Under either section 2-615 or section 2-619, our review is *de novo*.  *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 64.  *De novo* consideration means we perform the same analysis that a trial court would perform.  *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).  Moreover, "[a] dismissal order may be affirmed 'if it is justified in the law for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial court, or its specific findings, are correct or sound.' " *BDO Seidman, LLP v. Harris*, 379 Ill. App. 3d 918, 923 (2008) (quoting *Natural Gas Pipeline Co. of America v. Phillips Petroleum Co.*, 163 Ill. App. 3d 136, 142 (1987)).  With these principles in mind, we address the dismissal of counts I, II and IV of Mack's verified amended complaint.

¶ 21                          Count I: Declaratory Judgment

¶ 22    Count I of Mack's verified amended complaint requested the circuit court to issue a declaratory judgment.  The Illinois declaratory judgment statute provides in pertinent part:

> "(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed,

including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation *** and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2010).

"The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003).

¶ 23    In this case, Mack argues it has a legal tangible interest in the strict enforcement of the Village water ordinance, as such enforcement would induce Mack's tenants to pay the water charges.  In particular, Mack alleged the Village failed to perform ministerial tasks by failing to: (1) conduct a second water meter reading or failed to leave a notice of shut off after the second water meter reading; (2) "red tag" properties in preparation for discontinuance of water service 10 days after notice was left; and (3) disconnect water service at properties more than 60 days delinquent in payments.  An " '[o]fficial duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion.' " (Internal quotation marks omitted.)  *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 496 (2001) (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194 (1997) (discussing ministerial acts in the context of the Tort Immunity Act)).[4]

---

[4] Mack's focus on the nonperformance of "ministerial" acts also parallels the law governing the writ of *mandamus*.  "*Mandamus* is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty."  *People ex rel. Madigan v. Snyder*, 208

Ill. 2d 457, 464 (2004). "Generally, a writ of *mandamus* will be awarded only if a plaintiff establishes a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ." *Id*. at 465. "There must also be no other adequate remedy." *Id*. "The writ will not lie when its effect is to substitute the court's judgment or discretion for that of the body which is commanded to act." (Internal quotation marks omitted.) *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999). "Thus, *mandamus* is not appropriate to regulate a course of official conduct or enforce the performance of official duties generally." *Givot v. Orr*, 321 Ill. App. 3d 78, 90 (2001). Generally, the decision to enforce an ordinance is discretionary in nature. See, *e.g*., *McClaughry v. Village of Antioch*, 296 Ill. App. 3d 636, 644-45 (1998); see also *Castillo v. Jackson*, 207 Ill. App. 3d 799, 804 (1990), *aff'd*, 149 Ill. 2d 165 (1992) (there is a "legion of adjudicated cases" recognizing that a prosecutor or similar enforcing official may exercise a virtually unreviewable. discretionary power to decline to enforce a statutory command (Internal quotation marks omitted.)).

In this case, Mack merely seeks a declaration of its rights under the Village water ordinance, rather than to compel Village officials to perform any particular action. This court has not settled the question of whether a plaintiff may, given the tendency to liberalize use of the declaratory judgment act, supplant *mandamus* in cases where the controversy is ripe. See *Koziol v. Village of Rosemont*, 32 Ill. App. 2d 320, 326-28 (1961) (in which the case did not initially require the use of *mandamus*). We need not settle that question in this case, as the Village and Herzog did not seek dismissal on the ground that Mack was required to pursue a writ of *mandamus*. Rather, we observe that Mack's declaratory judgment action, by alleging the Village failed to perform ministerial tasks, is consistent with the idea that its tangible legal interest in the enforcement of the Village water ordinance involves a clear duty to act on the part of Village

11

¶ 24    The ordinance, however, provided that premises with delinquent accounts "*may* be considered for 'red tagging' in preparation for 'shut off' of water to the premises." (Emphasis added.)  Thus, this aspect of the ordinance does not *require* the Village to "red tag" or leave a notice of discontinuance of water service after a second meter reading.  After the expiration of the time for payment specified by ordinance, a list was required to be compiled of those premises with unpaid charges and the ordinance provided such premises "shall be *authorized* for 'red tagging' and 'shut off.' " (Emphasis added.)  This court has generally interpreted the term "authorized" in accordance with its plain and ordinary meaning as " '[t]o empower' " or " 'to give a right or authority to act.' "  *Pierce Downer's Heritage Alliance v. Village of Downers Grove*, 302 Ill. App. 3d 286, 296 (1998) (quoting Black's Law Dictionary 122 (5th ed. 1979)).  "The term has also been defined as 'to permit a thing to be done in the future.' "  *Id.* (quoting *Midland Iron & Steel Corp. v. Chicago, Rock Island & Pacific Ry. Co.*, 4 Ill. App. 3d 369, 371 (1972)).  Thus, the plain terms of the ordinance gave the Village the authority to "red tag" water meters and discontinue water service at premises with delinquent accounts, but did not require the Village to do so on a particular time schedule.  Moreover, the ordinance required the Village clerk to send notice by mail to the owner only after premises were scheduled for "red tagging," not immediately after the second water meter reading.

¶ 25    Lastly, and perhaps most significantly, the ordinance in this case imposes joint and several liability on Mack for any unpaid water charges regarding its properties.  Even assuming that the enforcement of the ordinance Mack seeks may encourage Mack's lessees to pay the water charges, the Village is legally entitled to seek the full amount of the unpaid water charges from Mack as the owner of the premises.  See *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795,

officials.

801 (2009) (discussing common law doctrine of joint and several liability). The ordinance also provided that the Village may elect to file a lien against the property or to file a civil action against the owner, occupant, or user of the real estate. In short, Mack failed to allege facts that would establish the Village failed to perform ministerial tasks, as opposed to acts of discretion or judgment. Accordingly, Mack failed to allege a tangible legal interest in this case.

¶ 26    We also observe that Mack, as a lessor, has remedies other than a judicial declaration of rights. "The mere existence of another remedy does not require dismissal of a declaratory judgment action, but it may constitute sufficient grounds for dismissal in the trial court's discretion." *Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 203 (1993) (citing *Marlow v. American Suzuki Motor Corp.*, 222 Ill. App. 3d 722, 728 (1991)). The Second District of this court, however, has concluded "that a trial court may not dismiss a claim for declaratory relief on the sole ground that another remedy is available." *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 311 (2003); see also *AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684, 692 (1998) (Fourth District ruling the availability of a quiet title action alone did not warrant the dismissal of a declaratory judgment action on the pleadings). In this case, Mack not only lacks a tangible legal interest in the strict enforcement of the Village water ordinance, but Mack already sought to protect its economic interest by imposing a duty on its lessees to pay the water charges. [5] Mack also could seek to protect its economic interest by including the expected water charges in the

---

[5] During oral argument, counsel for Mack observed that pursuing its tenants and former tenants can be difficult. Mack has not established, however, that any difficulty Mack might have in collecting water charges from its tenants imposes a duty on the Village to collect the water charges.

rent it charges lessees, as opposed to relying on the Village to allocate its resources and exercise its discretion in support of Mack's business. The fact that Mack already has a remedy available is not the sole basis to dismiss Mack's claim for a declaratory judgment, but it is an additional reason supporting the dismissal in this case.

¶ 27    Accordingly, for all the aforementioned reasons, Mack has failed to establish the circuit court erred in dismissing count I of the verified amended complaint.

¶ 28                                    Count II: Breach of Contract

¶ 29    Count II of Mack's verified amended complaint alleged the Village breached a contract with property owners to provide water service in accordance with the Village's ordinances. The essential elements of a breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff. *Batson v. The Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 35. In this case, the Village argues its ordinances are not a contract with property owners to provide water service.

¶ 30    Historically, the legal relationship between the municipality engaged in the business of furnishing water to its inhabitants and a water consumer was "essentially one of contract." *Brooks v. Village of Wilmette*, 72 Ill. App. 3d 753, 756 (1979) (citing *People ex rel. Brockamp v. Schlitz Brewing Co.*, 261 Ill. 22 (1913), and *Rosborough v. City of Moline*, 30 Ill. App. 2d 167 (1961)). The *Brockcamp* court, in determining water charges were not "taxes," reasoned:

> "When a municipality goes into the business of furnishing water, while such business is more or less public in its nature, it does so not in the capacity of local sovereignty. [Citation.] The obligation of the consumer to pay rests upon a contract entered into between the city and the consumer, *which contract the*

*consumer had an option to make or not, as he pleased*." (Emphasis added.)

*Brockamp*, 261 Ill. at 25.

The characterization of the relationship as contractual thus depended on the voluntary nature of the transaction. See *id*.; see also *Rosborough*, 30 Ill. App. 2d at 172 (property owner's application for water service stated the application and acceptance by the municipality constituted a contract).[6]

¶ 31    More recently, this court has ruled a municipality may mandate that property owners connect to the municipal water system and require payment for the service. *Village of Algonquin v. Tiedel*, 345 Ill. App. 3d 229, 236 (2003). In *Village of Algonquin*, this court reasoned government is not required to deal with citizens on a purely contractual basis where the state action represents a rational response to the myriad problems caused by private water wells. See *id*. at 235-36 (adopting the rationale and holding in *Stern v. Halligan*, 158 F.3d 729 (3d Cir. 1998)). The court observed that when a municipality requires use of its water service, " '[t]he only forced contract is the broader social contract.' " *Village of Algonquin*, 345 Ill. App. 3d at 236 (quoting *Stern*, 158 F.3d at 735).

¶ 32    Our decision in *Village of Algonquin* is also consistent with the principle that " '[t]he legislature must be free to exercise its constitutional authority without concern that each time a

---

[6] Mack observes that this court referred to the relationship between a municipality and a water consumer to be contractual as recently as our decision in *Tepper v. County of Lake*, 233 Ill. App. 3d 80, 82 (1992), which involved a charge based on an allegedly inaccurate water meter. The *Tepper* court did not set forth the facts upon which it concluded the relationship was contractual, but it relied upon *Brooks* and *Rosborough*, cases in which the record established the contractual nature of the relationship. *Id*.

public policy is expressed contractual rights may thereby be created.' " *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 71 (2004) (quoting *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 106 (1990)). "A party who asserts that a State law creates contractual rights has the burden of overcoming the presumption that a contract does not arise out of a legislative enactment." *Fumarolo*, 142 Ill. 2d at 104.

¶ 33    In this case, Mack's verified amended complaint alleged that the Village exercised control over the supply of residential properties within the Village. A Village ordinance prohibits private companies and individuals from supplying water to any building, structure or premises into which water service is introduced. Accordingly, the Village's provision of water service represents the exercise of its police power, not the establishment of a voluntary contractual relationship. See *Village of Algonquin*, 345 Ill. App. 3d at 236. Thus, we conclude the circuit court did not err in dismissing count II of Mack's verified amended complaint pursuant to section 2-615 of the Code.

¶ 34                              Count IV: Willful and Wanton Conduct

¶ 35    Lastly, count IV of Mack's verified amended complaint alleged that Herzog engaged in willful and wanton conduct in retaliation against Mack. At the outset, we observe that under Illinois law, a separate and independent tort of willful and wanton conduct does not exist. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010). Illinois law regards willful and wanton conduct as an aggravated form of negligence. *Id.*

¶ 36    Herzog did not move to dismiss count IV under section 2-615 of the Code. As Herzog's motion was based on section 2-619 of the Code, we assume the legal sufficiency of the claim. *Russell*, 342 Ill. App. 3d at 670. Herzog's motion to dismiss relies on the Tort Immunity Act. The purpose of the Tort Immunity Act is to protect local public entities and public employees

from liability arising from the operation of government.  745 ILCS 10/1-101.1 (West 2010).  "In promulgating the Tort Immunity Act, the legislature 'sought to prevent the dissipation of public funds on damage awards in tort cases.' "  *Kevin's Towing, Inc. v. Thomas*, 351 Ill. App. 3d 540, 544 (2004) (quoting *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003)).  The rules of statutory construction require courts "to ascertain and give effect to the intent of the legislature."  *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70.  In doing so, we "construe the statute as a whole and afford the language its plain and ordinary meaning."  *Id*.  We must also avoid rendering any part meaningless or superfluous, and consider words and phrases in light of other relevant provisions of the statute.  *Id*.  Moreover, "[w]hen a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern."  *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346 (2008).

¶ 37    Herzog relies on three provisions of the statute.  Section 2-206 of the Tort Immunity Act provides:

"A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."  745 ILCS 10/2-206 (West 2010).[7]

---

[7] Herzog's motion to dismiss referred to section 2-104 of the Tort Immunity Act, which provides the parallel immunity to local public entities.  745 ILCS 10/2-104 (West 2010).  Mack's opening brief noted section 2-104 does not apply to Herzog.  Mack, however, did not raise this objection in the circuit court.  Generally, arguments not raised in the trial court cannot be raised

Section 4-102 of the Tort Immunity Act provides in part:

> "Neither a local public entity nor a public employee is liable for failure to
>
> establish a police department or otherwise provide police protection service or, if
>
> police protection service is provided, for failure to provide adequate police
>
> protection or service, failure to prevent the commission of crimes, failure to detect
>
> or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-
>
> 102 (West 2010).

Section 5-102 of the Tort Immunity Act provides:

> "Neither a local public entity that has undertaken to provide fire protection service

for the first time on appeal. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996);

*Kalven v. City of Chicago*, 2014 IL App (1st) 121846, ¶ 26. Had Mack raised this objection in

the trial court, Herzog could have provided the correct citation to the Tort Immunity Act, as he

has in response to Mack's argument on appeal. Accordingly, Mack's objection is forfeited on

appeal.

Moreover, "it is well established that an appellee may argue in support of the judgment

on any basis which appears in the record [citation], and an appellate court may affirm a trial

court's judgment on any grounds which the record supports [citation], even where those grounds

were not argued by the parties [Citation]." *Studt v. Sherman Health Systems*, 2011 IL 108182,

¶ 48 (Karmeier, J., specially concurrning); see *Cuellar v. Hout*, 168 Ill. App. 3d 416, 425 (1988);

*Redd v. Woodford County Swine Breeders, Inc.*, 54 Ill. App. 3d 562, 565 (1977) (and cases cited

therein). Accordingly, Herzog is entitled to argue the circuit court was correct based on section

2-206 of the Tort Immunity Act, particularly where Mack waited until this appeal to dispute the

applicability of the substantively similar section 2-104.

nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." 745 ILCS 10/5-102 (West 2010).

The provisions Herzog relies upon make no exception for willful or wanton conduct. See *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 515 (2006) (section 4-102 contains no exception for willful and wanton misconduct); *Village of Bloomingdale*, 196 Ill. 2d at 496 (section 2-104 immunity for the issuance or denial of permits and approvals does not contain an exception for willful and wanton misconduct). Courts will not insert exceptions for "willful and wanton conduct" or for "corrupt or malicious motives" into provisions of the Tort Immunity Act when such exceptions do not appear in the plain language of the statute. See *Village of Bloomingdale*, 196 Ill. 2d at 493-94.

¶ 38    Mack argues Herzog may be liable for willful and wanton conduct pursuant to section 2-202 of the Tort Immunity Act, which immunizes public employees for an act or omission "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2010). Mack also relies on section 2-208, which provides "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause." 745 ILCS 10/2-208 (West 2010).

¶ 39    In this case, Mack alleged Herzog failed to issue various permits, certificates, and other forms of approval. Mack also alleged Herzog was liable for the failure of the Village to provide police or fire protection to Mack properties. These allegations are encompassed by sections 2-206, 4-102, and 5-102 of the Tort Immunity Act, which specifically address the issuance or

denial of governmental approvals, and the failure to provide police or fire protection services. Accordingly, sections 2-206, 4-102, and 5-102 of the Tort Immunity Act—the provisions of the statute more specifically applicable to Mack's allegations—are controlling. *Abruzzo*, 231 Ill. 2d at 346. Consequently, the Mack's claim of willful and wanton conduct fails regarding these allegations. See *DeSmet*, 219 Ill. 2d at 515; *Village of Bloomingdale*, 196 Ill. 2d at 496.[8]

---

[8] In *Village of Sleepy Hollow v. Pulte Home Corp.*, 336 Ill. App. 3d 506 (2003), the appellate court ruled that the immunity provided by section 2-201 of the Tort Immunity Act for discretionary policy decisions does not always take precedence over the provisions of section 2-208. *Id.* at 510. The *Village of Sleepy Hollow* court, however, reasoned that section 2-201 does not always control because "[s]ection 2-201 begins with the phrase, '[e]xcept as otherwise provided by Statute' (745 ILCS 10/2-201 (West 2000)), which clearly indicates that the legislature did not intend for public employees to receive immunity from liability in all situations involving policy and discretion." *Id.*

We observe that our supreme court has ruled that willful and wanton conduct cannot deprive a municipality of an immunity granted by section 2-201. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 347 (1998); see also *Kevin's Towing, Inc*, 351 Ill. App. 3d at 547-48 (categorizing actions as nondiscretionary solely based on a public employee's intent would conflict with the supreme court's rulings that section 2-201 immunity is not limited by willful and wanton conduct or by corrupt or malicious motives). Our supreme court has stated that when the legislature intends to except willful and wanton misconduct from the provisions of an immunity statute, it has " ' "unambiguously done so." ' " *DeSmet*, 219 Ill. 2d at 514 (quoting *Village of Bloomingdale*, 196 Ill. 2d at 491, quoting *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996)). We need not resolve the apparent tension between *Harinek* and *Village of*

¶ 40    Mack, however, also alleged Herzog issued citations without an opportunity to cure violations and subjected Mack properties to arbitrary reinspection.  These allegations relate to the enforcement of the law.  Thus, section 2-202, which does not immunize willful and wanton conduct, is applicable to these allegations.  See *Abruzzo*, 231 Ill. 2d at 346.  Moreover, the issuance of a citation may be considered the institution of a judicial or administrative proceeding.  See, *e.g.*, *Village of Glenview v. Buschelman*, 296 Ill. App. 3d 35, 37 (1998).  Accordingly, section 2-208 of the Tort Immunity Act also may apply to the allegations regarding the issuance of citations.  We therefore turn to consider whether Herzog engaged in willful and wanton conduct or with malice absent probable cause regarding these allegations.

¶ 41    "Willful and wanton conduct" is defined by the Tort Immunity Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210 (West 2010).  The violation of self-imposed rules or internal guidelines does not normally impose a legal duty and thus would not constitute negligence or willful and wanton conduct.  *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 336 (2007).  Although generally a question of fact, a court may "hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other contrary conclusion can be drawn."  *Young v. Forgas*, 308 Ill. App. 3d 553, 562 (1999).

¶ 42    In this case, Mack's verified amended complaint alleges that on numerous occasions,

---

*Sleepy Hollow* in this case.  Sections 2-206, 4-102, and 5-102 of the Tort Immunity Act, unlike section 2-201, do not contain express exceptions for the application of other statutes.  745 ILCS 10/2-206, 4-102, 5-102 (West 2010).  Thus, the reasoning of *Village of Sleepy Hollow* does not apply to this case.

Herzog informed Mack principal Jack McClelland that the Village's actions obstructing Mack's business were Mack's fault "for getting the lawyers involved." Mack thus alleges a course of action which shows an actual or deliberate intent. The injury alleged from the issuance of the citations and the reinspections, however, is lost revenue. The issue, therefore, is whether such damages constitute "harm" within the scope of section 1-210 of the Tort Immunity Act.

¶ 43     In cases analyzing willful and wanton conduct under section 1-210, this court has ruled " '[i]t is essential that plaintiff allege and establish that when the defendant acted, or failed to act, he had knowledge, or should have had the knowledge under the circumstances, that his conduct posed a high probability of serious *physical* harm to others.' " (Emphasis added.) *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 72 (quoting *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981)). Considering the term "harm" in light of other relevant provisions of the statute, our interpretation of the term in *Choice* is consistent with the remainder of section 1-210, which refers to "an utter indifference to or conscious disregard for the *safety* of others or their property." (Emphasis added.) 745 ILCS 10/1-210 (West 2010). Similarly, section 500 of the Restatement (Second) of Torts, discussing reckless conduct, refers to conduct that "creates an unreasonable risk of *physical* harm to another." (Emphasis added.) Restatement (Second) of Torts § 500 (1965). Our supreme court has relied on section 500 of the Restatement (Second) of Torts in analyzing willful and wanton conduct under section 1-210 of the Tort Immunity Act. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992). Accordingly, section 500 of the Restatement (Second) of Torts informs our analysis of the statute in this case.

¶ 44     Furthermore, Illinois law regards willful and wanton conduct as an aggravated form of the tort of negligence (*Krywin*, 238 Ill. 2d at 235) and we are interpreting the *Tort* Immunity Act,

the purpose of which is to prevent the dissipation of public funds on damage awards in *tort* cases (*Kevin's Towing, Inc.*, 351 Ill. App. 3d 544). "At common law, solely economic losses are generally not recoverable in tort actions." *In re Chicago Flood Litigation*, 176 Ill. 2d at 198. With exceptions not alleged in this case, "[a]bsent injury to a plaintiff's person or property, a claim presents an economic loss not recoverable in tort." *Id*. at 201.

¶ 45    In this case (unlike, for example, the alleged failure to provide fire protection), Mack does not allege the reinspections or the issuance of citations resulted in physical harm to persons or property.  Rather, Mack's verified amended complaint alleged Mack was required to pay fees and was in danger of losing tenants who sought to move into various Mack properties.  Mack thus alleged economic losses that are generally not recoverable in tort.  Such losses are not the "harm" addressed in the section 1-210 definition of willful and wanton conduct.  Accordingly, the immunity provided by section 2-202 of the Tort Immunity Act applies, rather than the exception stated therein.

¶ 46    Lastly, there is the question of whether Mack sufficiently alleged that Herzog, by ordering the issuance of the citations, acted "maliciously and without probable cause."  745 ILCS 10/2-208 (West 2010).  We observe that the language of section 2-208 is conjunctive, requiring Mack to allege both malice *and* the absence of probable cause.  See *Village of Sleepy Hollow*, 336 Ill. App. 3d at 512 (and cases cited therein).  "The absence of probable cause cannot be inferred from malice." *Knox County v. Midland Coal Co*., 265 Ill. App. 3d 782, 788 (1994) (and cases cited therein).

¶ 47    In this case, Mack alleged actions and statements by Herzog from which malice regarding Mack may reasonably be inferred.  Mack also alleged that the Village (on information and belief at the direct order of Herzog), contrary to its prior practice, commenced issuing citations

regarding various Mack properties without providing an opportunity to cure alleged violations. This allegation does not assert or support an inference that the citations were issued without probable cause. Mack also alleged that its properties were subject to arbitrary reinspections, but Mack has cited no authority establishing or suggesting that a property inspection is the institution of an administrative or judicial proceeding. Thus, the allegations fall within the scope of the immunity provided by section 2-208 of the Tort Immunity Act, rather than the exception stated therein.

¶ 48    For all of the aforementioned reasons, the circuit court did not err in dismissing count IV of Mack's verified amended complaint pursuant to section 2-619(a)(9) of the Code.

¶ 49    Lastly, Mack suggested during oral argument that the case be remanded with leave to replead. "Ordinarily a plaintiff whose complaint is dismissed for failure to state a cause of action can complain of a judgment being entered in bar of action without leave to replead only if it seeks and is denied leave to replead. [Citation.]" *Eversole v. Wasson*, 80 Ill. App. 3d 94, 97 (1980). In this case, Mack filed no motion to replead in the circuit court. Mack also informed the court during oral argument that there was no transcript of proceedings regarding the dismissal of the verified amended complaint. Furthermore, "[a]ny party who seeks on appeal to amend his or her pleadings or the process in the record on appeal shall present a written application therefor, supported by affidavit." Ill. S. Ct. R. 362(a) (eff. Feb. 1, 1994). Mack filed no such application in this appeal. Indeed, Mack did not seek leave to replead in his appellate briefs. Accordingly, we decline to remand with leave to replead in this case.

¶ 50                          CONCLUSION

¶ 51    For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 52   Affirmed.

¶ 53   JUSTICE GORDON, concurring in part and dissenting in part.

¶ 54   I concur with the majority's order affirming the dismissal of count 1, but not counts II and IV. As I explain below, I would reverse the trial court's dismissal of plaintiff's counts II and IV and, thus, I must respectfully dissent.

¶ 55                               I. Count II:  Breach of Contract

¶ 56   The majority affirms the dismissal of count II, for breach of contract, on the ground that the Village's provision of water is an exercise of its police power and therefore it cannot constitute a contract.  The majority acknowledges that, "[h]istorically, the legal relationship between the municipality engaged in the business of furnishing water to its inhabitants and a water consumer was 'essentially one of contract.' " *Supra* ¶ 30 (quoting *Brooks*, 72 Ill. App. 3d at 756).  But the majority rejects this line of cases based on one appellate court case:  *Village of Algonquin v. Tiedel*, 345 Ill. App. 3d 229, 236 (2003).

¶ 57   However, the *Algonquin* court was faced with a different issue than the issue at bar.  In *Algonquin*, the appellate court held that, pursuant to its police power, a municipality could require residents to use its water. *Algonquin*, 345 Ill. App. 3d at 234 (an ordinance requiring residents to use the village's water is a valid exercise of the village's police power).  By contrast, in the case at bar, plaintiff is not disputing the Village's power to require use of its water; rather, plaintiff is contesting the allegedly arbitrary and capricious manner in which the Village is providing that service.  In the decade since *Algonquin* was decided, it has been cited by one published case, and that case cited it for the proposition which it held, namely, that a municipality's police power permits it to require use of its water. *Board of Education of Dolton School District 149 v. Miller*, 349 Ill. App. 3d 806, 812 (2004) (parenthetical described

*Algonquin*'s holding as "compelling homeowners to connect to municipal water supply"). Thus, the one case relied on by the majority is inapposite and not persuasive on the point for which it is cited.

¶ 58                                    II. Count IV:  Against the Village Manager

¶ 59    Second, the majority affirms the dismissal of count IV, which was brought against defendant Bert Herzog, the village manager of Dolton.

¶ 60                                    A. Plaintiff's Allegations

¶ 61    This count alleged that Herzog has supervisory authority over all village departments, including the water and building departments and that he committed willful and wanton conduct against plaintiff for " 'getting the attorneys involved.' "  Plaintiff alleged that "all of the Village's retaliatory actions as outlined herein [in the complaint] were performed at Herzog's direction or with his express approval."

¶ 62    Count IV further alleged:

"71.    Each of the retaliatory acts outlined in this Complaint constitute willful and wanton abuses of the Village's responsibilities under its ordinances to provide public safety and water services to property owners and tenants within its borders.  On information and belief, Village Manager, Bert Herzog, has ordered Dolton employees to do anything they can to harass Mack and hinder its operations within the Village while this litigation is ongoing.

72.    Mack has incurred and continues to incur damages on a daily basis, as the abuses continue.  There is no adequate remedy at law to Mack as a property owner in the Village.  Mack cannot refuse to submit to re-inspection, or place tenants in the properties that currently require rental approval, as it will be forced

to incur additional violations and citations from the Village. Moreover, Mack cannot force the Village to issue transfer stamps, and cannot legally provide police protection to its property managers."

¶ 63                    B. Defendants' Motion to Dismiss

¶ 64                    1. Section 2-619

¶ 65    Defendants moved to dismiss count IV pursuant to section 2-619, on the ground that Herzog was immune under the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2010)). While a motion to dismiss pursuant to section 2-615 challenges the legal sufficiency of a complaint based on defects apparent on its face (*Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 7 (citing *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006))), a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats plaintiff's claim. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 57 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)); 735 ILCS 5/2-619(a)(9) (West 2012) (a motion under section 2-619 argues that "the claim asserted against defendant is barred by *** affirmative matter avoiding the legal effect of or defeating the claim").

¶ 66                    2. Statutory Sections Cited by Defendant

¶ 67    Since defendants moved under section 2-619, we do not consider whether count IV states a cause of action but consider only whether the statutory sections cited by defendants constitute affirmative matter defeating plaintiff's claim.

¶ 68    In their motion to dismiss, defendants cited three sections of the Tort Immunity Act: (1) section 2-104, concerning the issuance, denial, suspension or revocation of permits (745 ILCS 10/2-104 (West 2010)); (2) section 4-102, concerning police protection (745 ILCS 10/4-102

(West 2010)); and (3) section 5-102, concerning the failure to suppress or contain a fire (745 ILCS 10/5-102 (West 2010)).

¶ 69    Section 2-104 provides in full:

"A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-104 (West 2010).

The majority concluded that the above-quoted section, which refers only to a public entity and not to an employee, did not apply to defendant Herzog. *Supra* ¶ 37 n.7.

¶ 70    Section 4-102 provides in full:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee." 745 ILCS 10/4-102 (West 2010).

¶ 71    Section 5-102 provides in full:

"Neither a local public entity that has undertaken to provide fire protection service nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient

personnel, equipment or other fire protection facilities." 745 ILCS 10/5-102 (West 2010).

¶ 72     In addition to the above-quoted sections, the majority holds that defendants can raise, for the first time on appeal, a statutory section that they did not cite before the trial court, namely, section 2-206 (745 ILCS 10/2-206 (West 2010)).  *Supra* ¶ 37 n.7.  The majority holds that defendants can do this because plaintiff should have realized that defendants were citing the wrong section and should have objected below, and that because plaintiff did not flag for defendants a better section to cite, plaintiff cannot object now to defendants raising it for the first time on appeal.  *Supra* ¶ 37 n.7.  I know of no rule of waiver that requires a plaintiff's attorney to advise the defendants of a better argument to make or a better statutory section to cite.  It was defendants' burden to raise the "affirmative matter" barring plaintiff's claim in their section 2-619 motion to dismiss.  735 ILCS 5/2-619 (West 2012). By failing to make any arguments concerning section 2-206 in their brief to the court below, defendants waived the issue for our consideration on appeal. *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 58 (issues not raised in the trial court are waived and may not be raised for the first time on appeal).

¶ 73                               C. Plaintiff's Response

¶ 74                          1. Section 2-101:  Contract Exception

¶ 75     In its response to defendants' motion to dismiss, plaintiff argued, first, that the Tort Immunity Act does not apply to contracts.  Section 2-101 of the Act provides:  "Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on:  a). Contract[.]"  745 ILCS 10/2-101 (West 2010).   As I discussed above, since water provision has been historically viewed as a contract, the Tort Immunity Act does not apply to plaintiff's claims.

¶ 76                          2. Exceptions for Wanton and Willful Conduct

¶ 77     Second, plaintiff argued in its response to the trial court that, even if the rubric of the Act

applied, plaintiff's claim fell into the Act's exceptions for wanton and willful conduct.

Specifically, plaintiff cited the exceptions contained in: (1) section 2-202, which concerns the

execution or enforcement of the law by public employees (745 ILCS 10/2-202 (West 2010)); and

(2) section 2-208, which concerns the institution or prosecution of judicial or administrative

proceedings (745 ILCS 10/2-208 (West 2010)).

¶ 78     Section 2-202 provides in full:

        "A public employee is not liable for his act or omission in the execution or

        enforcement of any law unless such act or omission constitutes willful and wanton

        conduct."  745 ILCS 10/2-202 (West 2010).

¶ 79     Section 2-208 provides in full:

        "A public employee is not liable for injury caused by his instituting or prosecuting

        any judicial or administrative proceeding within the scope of his employment,

        unless he acts maliciously and without probable cause."  745 ILCS 10/2-208

        (West 2010).

¶ 80     With respect to the above-quoted sections, the majority holds, first, that the sections cited

by defendants provide absolute immunity and that they trump the "willful and wanton" and

"maliciously" language provided in sections 2-202 and 2-208 (745 ILCS 10/2-202, 2-208 (West

2010)).  *Supra* ¶ 39.  However, the appellate court rejected a similar argument in *Village of*

*Sleepy Hollow v. Pulte Home Corp.*, 336 Ill. App. 3d 506 (2003).  In *Sleepy Hollow*, the village

argued that the immunity provided by section 2-201 for discretionary acts was absolute and thus

trumped the exception in section 2-208, which is one of the sections at issue in the case at bar.

*Sleepy Hollow*, 336 Ill. App. 3d at 510. By contrast, the opposing party in *Sleepy Hollow* argued that section 2-208 was "more specific" and thus it was the section that "must apply." *Sleepy Hollow*, 336 Ill. App. 3d at 510.

¶ 81     The *Sleepy Hollow* court rejected both arguments, holding that the various sections of the Act "operate in conjunction with each other." *Sleepy Hollow*, 336 Ill. App. 3d at 510. The court observed that, "[w]hen construing immunities under the Immunity Act, a court must view the statute as a whole, with all relevant parts considered together." *Sleepy Hollow*, 336 Ill. App. 3d at 510. The court held that both sections applied to offer immunity to the village in different ways, but that the "maliciously" language in section 2-208 provided an exception to the immunity protections set forth in both section 2-208 and other parts of the Act. *Sleepy Hollow*, 336 Ill. App. 3d at 510, 512.

¶ 82     The issue before us is different from the issue in *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324 (2008), relied on by the majority. *Supra* ¶¶ 36, 40. In *Abruzzo*, 231 Ill. 2d at 327, the issue was whether the Emergency Medical Services (EMS) Systems Act (the EMS Act) (210 ILCS 50/3.150(a) (West 2004)) or the Tort Immunity Act applied. Both acts appeared to apply, and they conflicted with each other. *Abruzzo*, 231 Ill. 2d at 344. Forced to pick between two conflicting acts, the court picked the EMS Act because it was both the "more specific" and the "more recent" of the two separate legislations. *Abruzzo*, 231 Ill. 2d at 346. By contrast, in the instant case, we are called upon to harmonize the sections of one act.

¶ 83     Second, the majority holds that, since the exceptions for willful and wanton conduct do not appear in the same statutory sections cited by defendant Herzog, then applying them here would, in effect, "insert" exceptions that "do not appear in the plain language of the statute." *Supra* ¶ 37. However, when we refer to sections cited by defendant Herzog, we do not consider

section 2-104 (745 ILCS 10/2-104 (West 2010)) because, as the majority correctly observed, it does not apply to Herzog. *Supra* ¶ 37 n.7. Also, as we explained above, defendant Herzog waived any arguments based on section 2-206 (745 ILCS 10/2-206 (West 2010)) by failing to raise it in the court below. Thus, the only sections cited by Herzog that are under consideration are sections 4-102 and 5-102 (745 ILCS 10/4-102, 5-102 (West 2010)) which concern the provision of fire and police protection and which affect only a small part of plaintiff's allegations.

¶ 84    In addition, the exceptions are in statutory sections cited by plaintiff. While "we may not read into the statute limitations that the legislature did not express" (*Sleepy Hollow*, 336 Ill. App. 3d at 511 (citing *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 493 (2001))), the exceptions in sections 2-202 and 2-208 are expressly stated by the legislature in the Act. " '[T]he legislature has recognized exceptions to its grants of immunity and enumerated those exceptions in the plain language of the Act.' " *Sleepy Hollow*, 336 Ill. App. 3d at 510-11 (quoting *Village of Bloomingdale*, 196 Ill. 2d at 494-95 (specifically listing sections 2-202 and 2-208 as examples of these exceptions)).

¶ 85    The issue before us is also different from the issue in *Village of Bloomingdale*, relied on by the majority. *Supra* ¶¶ 37, 39. In *Village of Bloomingdale*, the issue was whether "the Illinois Constitution prohibits the insertion of the common law 'corrupt or malicious motives' exception into the immunities provided by the Act." *Village of Bloomingdale*, 196 Ill. 2d at 486. Holding that the exception could not be read into the Act, the court observed that "*no* provision of the Act contains an exception for 'corrupt or malicious motives.' " (Emphasis in original.) *Village of Bloomingdale*, 196 Ill. 2d at 495. By contrast, in the case at bar, we are discussing exceptions expressly provided in the Act itself.

¶ 86     Third, the majority acknowledges that section 2-208 concerns proceedings and that this section "may" apply.  *Supra* ¶ 40.  However, the majority does not consider the proceeding alleged by plaintiff.  Plaintiff's amended complaint, which is the complaint at issue, alleges in count IV:

> "68. In July 2012, [plaintiff] Mack sent a copy of a draft Complaint to Village Manager Bert Herzog and Village Attorney Evangeline Levison indicating that, should matters continue, it would be forced to file suit.  The Village's campaign of retaliation began shortly thereafter."

Thus, the complaint alleges that the "proceeding" is this lawsuit. 745 ILCS 10/2-208 (West 2010).

¶ 87     Section  2-208 says "instituting or prosecuting," so the word "prosecuting" must mean something different than "instituting," otherwise it would be superfluous.  *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70 (we must interpret a statute so as to avoid rendering any part "superfluous"). In interpreting a statute, we must "afford the language its plain and ordinary meaning." *Stanbridge*, 2012 IL 112337, ¶ 70.  The first meaning of "prosecute" in the dictionary is:  "To pursue or persist in so as to complete."  The American Heritage Dictionary, Second College Edition, 994 (1982).  It is defendant Herzog's retaliatory actions as part of pursuing this lawsuit that are the subject of count IV, and section 2-208 withholds immunity if he acts maliciously and without probable cause, which is what plaintiff has alleged.  745 ILCS 10/2-208 (West 2010).  Since defendants moved under section 2-619, we accept the legal sufficiency of these allegations. *Bank of America*, 2014 IL App (1st) 131252, ¶ 57.

¶ 88     Thus, even assuming *arguendo* that the Act applied to contract claims, count IV falls into the exceptions expressly carved out by the Act in section 2-202  for wanton and willful conduct

and section 2-208 for malicious conduct.

¶ 89                                  Conclusion

¶ 90     For the foregoing reasons, I would reverse the trial court's dismissal of plaintiff's counts II and IV and, thus, I must respectfully dissent.